METHODIST ORPHANS' HOME ASSOCIATION, Respondent, *v.* FIDELIO C. SHARP'S EXECUTOR, Appellant.

### June 4, 1878.

Gratuitous subscriptions for charitable purposes cannot be enforced unless the promisee has, in reliance on the promise, done something. The mere fact that others were by the promise led to subscribe is not sufficient. There is no consideration to support the promise, and it cannot be enforced.

APPEAL from St. Louis Circuit Court.

*Reversed, and judgment.*

H. G. SACHLEBEN, for appellant, cited: *Workman* v. *Campbell*, 46 Mo. 309, 34 Mo. 149; *Cook* v. *Elliott*, 34 Mo. 586; *College, etc.,* v. *Kendall*, 121 Mass. 528.

D. A. JANUARY, for respondent, cited: *Amherst Academy* v. *Cowles*, 6 Pick. 427; *Society* v. *Perry*, 6 N. H. 164; *George* v. *Harris*, 4 N. H. 533; *Comstock* v. *Howd*, 15 Mich. 237; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Westminster College* v. *Gamble*, 42 Mo. 411; *Norton* v. *Janvier*, 5 Harr. 346; *Collier* v. *Society*, 8 B. Mon. 68.

BAKEWELL, J., delivered the opinion of the court.

This action was instituted originally in the Probate Court

to recover against the estate of deceased a subscription made by him to the Methodist Orphans' Home Association, an incorporated charitable institution. The demand was not allowed in the Probate Court; but on trial anew in the Circuit Court, judgment was given against the estate, and defendant appeals.

It appears from the evidence that the Methodist Orphans' Home, before the association bearing this name was incorporated, had incurred a debt of $3,700 for the purposes of the charity. After the incorporation of plaintiff, for the purpose of liquidating this debt, charitable persons interested in the institution procured subscriptions to the following paper:—

" For the purpose of liquidating a debt of thirty-seven hundred dollars against the Methodist Orphans' Home of this city, we, the undersigned, agree to pay the amount placed opposite our names, upon the following condition, to wit: It is hereby expressly agreed and understood that no subscription, nor any part thereof, shall be deemed due, payable, or collectible, until the whole sum of $3,700 shall have been raised or subscribed."

Mr. Sharp, on application by the president of the plaintiff, signed this paper, and wrote " $100 " after his name. Other persons in like manner subscribed various sums, until $3,810 was subscribed. Of this, $1,585 remained unpaid at the date of the suit. The amount paid in was used in part payment of the debt. The debt was a debt secured by deed of trust executed by the trustees of the charity.

This record presents for our consideration the vexed question how far voluntary subscriptions for charitable purposes are binding. The law on this point is quite unsettled, and the most learned tribunals, after careful consideration, have reached opposite conclusions. The question has never been passed upon in Missouri by the Supreme Court. It does not arise in *Pitt* v. *Gentle*, 49 Mo. 74, or *Workman* v. *Campbell*, 46 Mo. 305, because in those cases expenses

had been incurred by others in consequence of the subscription; and in *Westminster College* v. *Gamble*, 42 Mo. 411, Judge Wagner is careful to say that the defence is based exclusively upon the ground that the conditions of subscription were not complied with. In Michigan, such promises have been held binding in recent cases (*Comstock* v. *Howd*, 15 Mich. 237); and in New Hampshire, cases to that effect are to be found in the earlier volumes of the reports (*George* v. *Harris*, 4 N. H. 533; *Society* v. *Perry*, 6 N. H. 164); and have probably been followed. In Massachusetts, *dicta* are to be found to the same effect; but it has been very recently decided there (*Cottage Street M. E. Church* v. *Kendall*, 121 Mass. 528) that a gratuitous subscription cannot be enforced unless the promisee has, in reliance on the promise, done something, and that it is not enough that others were led to subscribe by the subscription sought to be enforced. In New York, the question was very fully discussed in *Stewart* v. *Trustees of Hamilton College*, 2 Denio, 403. It was there held that a subscription-paper containing a provision that the subscribers were not to be bound unless their aggregate subscriptions reached a certain sum, being an undertaking to pay money on the occurrence of an event not to be brought about by the promisee, was a naked promise, upon which no action will lie. Chancellor Walworth in that case holds, however, that the consideration of the promise of each subscriber is the corresponding promise made by the other subscribers, and that as the party for whose benefit a promise is made may sue on it, though the consideration is between the promisor and a third person, a subscription by many to raise money for a charitable purpose in which all feel an interest is binding on all. The objection that there is no promisee is met, in the Michigan case cited above, by the suggestion that the promise becomes definite and fixed when by consent of the subscribers a person is appointed to receive the subscription.

We are inclined, however, to hold that such promises as

the one in the case at bar cannot be enforced, and that it cannot be said, without departing from principle, that there is any consideration to support them. They are honorable obligations, but they cannot be enforced, for want of a consideration; and where they have been held binding, it has evidently been on the ground of a supposed public policy. If the promise of one subscriber could be a consideration for the promise of the other, there would be less difficulty; but it seems that without reasoning in a vicious circle this cannot be said. The very question is whether any of these promises are binding: a void promise cannot be a consideration for another promise. There is here certainly no consideration moving from the promisor to the promisee; there is no benefit to the maker of the promise, and no loss, charge or obligation upon the promisee. The Methodist Orphans' Home had already contracted this debt when the subscription was made.

The judgment of the Circuit Court is reversed, and judgment is entered here for the defendant. All the judges concur.