School District v. Sheidley.

SCHOOL DISTRICT OF KANSAS CITY v. SHEIDLEY *et al.*, *Executors, Appellants.*

In Banc, May 4, 1897.

1. **Gift:** PROMISSORY NOTE. A gift is not completed till the money is paid. A note, which is a mere promise to pay, is not therefore a gift. It is essential to a voluntary donation that it go into effect at once and completely; that the money or thing given be delivered, and not merely promised.

2. **Gift to a Library:** PROMISSORY NOTE: CONSIDERATION. A note promising in the future to pay a school district a sum of money for the establishment of a library is not without consideration simply because the maker received no benefit nor value moving from the district to himself; the consideration will be sufficient to support the note, if the beneficiary expended money or incurred enforcible liabilities in reliance thereon. If the money was expended or the liability incurred in furtherance of the erection of the library which the maker desired established, and in reliance on the notes which he made, the consideration is sufficient.

3. ———: ———: ———: MAKER'S INSANITY: CONCURRENT UNDERTAKING. The notes for $25,000 for a library were executed and delivered in March; the school board took immediate action for the voting and issuing of $200,000 in bonds for library purposes, all of which was completed by July; in October the maker of the notes was adjudged insane; and in February a site for the building was bought for $30,000, of which $5,000 was paid in cash out of the general revenues of the school district, and mortgages issued for the balance. *Held*, that the purchase of the site, the erection of the building and other acts toward the general enterprise constituted one concurrent undertaking, and that the notes became valid and irrevocable contracts as soon as the district, relying upon their payment, expended money or incurred liability in promoting the general enterprise.

4. ———: ———: ———: INCUMBENT OFFICIAL OBLIGATION.   There is no such legal obligation incumbent on a school board to erect a library after bonds have been voted for the purpose, as will relieve a maker of notes issued to the school district before the bonds were authorized from their payment on the plea that there was no consideration.

5. ———: DELIVERY.   The notes in this case were delivered to a third party, by consent of the maker and payee, because the maker was about to depart for another city, it being understood that the notes were to be given the board whenever it called for them.   *Held*, a sufficient delivery.   It was not essential that the actual manual possession should have passed to some member of the board in order to effect a delivery; a constructive delivery was sufficient.

6. Notes: CONSIDERATION: PUBLIC POLICY: GENERAL ELECTIONS.   *Held*, in this case that the notes were not void as being issued contrary to public policy simply because the board was induced to order and hold an election, and to issue the bonds of the district, by the promise of the maker to give $25,000 in furtherance of the enterprise.

7. Illegal Contracts: PLEADING.   Whenever the defendant pleads a lack of consideration it is the duty of the court to consider the legality of the contract, and its illegality is sufficiently raised by an instruction in the nature of a demurrer to the evidence to require its consideration on appeal.

8. Notes: CONSIDERATION: EVIDENCE.   Evidence that the maker of notes was a man of great wealth is inadmissible where the whole issue is a lack of consideration.   But where one defense is that the maker was insane at the time he gave the notes, which amounted to $25,000, the evidence is proper in rebuttal as bearing on the question of his legal capacity.

*Appeal from Jackson Circuit Court.*

AFFIRMED.

*W. L. Stocking* and *C. O. Tichenor* for appellants.

(1) Very likely it is true that the rich should be generous, yet it also is true that courts in rendering judgments are not led to do so by motives of generosity.   *Stuart v. Church*, 84 Pa. 390.   (2) The notes sued upon were not gifts, they were simply promises to give.   *The Gammon Co. Lem. v. Robbins*, 128 Ind. 92; *Smith v. Smith*, 30 N. J. Eq. 564.   There was no

subscription. In such case the mutual promise of the subscribers is a consideration. (3) What then was the consideration for the notes sued upon? According to the oral testimony offered by plaintiff, Mr. Sheidley gave these notes to purchase a site for the library building. It can hardly be contended that the notes could be collected, had no site at all been purchased; *e. g.,* in case another had donated the site. It is true that this fact was lost sight of when plaintiff's instructions were given; there the consideration was put upon an altogether different ground. *Pratt, Adm'r, v. Trustees,* 93 Ill. 478; *Beach v. Church,* 96 Ill. 178; *Twenty-third St. Church v. Cornell,* 117 N. Y. 601. (4) The proposition to issue bonds for a library was carried almost unanimously, and no one voted for it because of the promise of a gift. The proposition to build had long been talked about; there was great necessity for it; public interest demanded it. In fine all that was done by the board in the premises, ought to have been done, and could have been done; it was plaintiff's duty to have done so, even had there been no promise on the part of Mr. Sheidley. *Chitty on Contracts* [11 Am. Ed.] 61. An agreement to do that which one is already under legal obligations to do, does not constitute a consideration for a contract. *Schuler v. Myton,* 48 Kan. 288; *Ayers v. Railroad,* 52 Iowa, 489; *Pratt, Adm'r, v. Trustees,* 93 Ill. 478; *Cottage Street, etc., Church v. Kendall,* 121 Mass. 528. (5) This is not a case of receiving a gift, but that of agreeing to do, and of the doing of that which plaintiff was empowered to do under the law, by reason of a promise to give. Plaintiff claims that, by reason of this action by the board, valid consideration was injected into notes, which had no consideration until some time after their execution. (6) Again such a transaction is contrary to public policy, and it "has a tendency to be injurious to the

public or against the public good," and notes based upon such a transaction, for consideration, can not be enforced. *State v. Williamson*, 118 Mo. 147. (7) These notes were held at the time suit was brought by one Tomb who refused to deliver them to either party. In order to read them, plaintiff forced him to bring them into court by a subpœna *duces* and after reading them it delivered them to the witness again. If plaintiff was entitled to these notes, Tomb refusing to deliver them, it ought to have replevined them from him, before bringing this suit, in order to be the holder of the same. *Tomlinson v. Ellison*, 104 Mo. 106. (8) The court erred in admitting evidence to show that Mr. Sheidley was a rich man. This evidence was admitted without qualification or instruction, and of course under such circumstances a verdict for plaintiff would be reasonably certain. *Woods v. Gunnert*, 67 Pa. 136; *Harkman v. Shaffer*, 71 Pa. 312.

*Gage, Ladd & Small* for respondent.

(1) The consideration for the notes was ample. It is not necessary that their maker should have received any personal benefit; it is sufficient that if, relying upon the proposed gift, the plaintiff incurred any trouble, expense or liability. This constitutes a good consideration for the notes. The evidence which established it was not controverted. *Steele v. Steele*, 75 Md. 477; *Brooks v. Owen*, 112 Mo. 251; *Devecmon v. Shaw et al.*, 69 Md. 199; *University v. Estate of Livingston*, 57 Iowa, 307; *George v. Harris*, 4 N. H. 535; *Trustees v. Garvey*, 53 Ill. 401; *Simpson College v. Tuttle*, 71 Iowa, 596; *Trustees of Amherst Academy v. Cowls*, 6 Pick. 427; *Koch v. Lay*, 38 Mo. 147; *Pitt v. Gentle*, 49 Mo. 74; *Richelieu Hotel Co. v. International Encampment Co.*, 140 Ill. 248; *Crosbie v. McDoual*, 13

Ves. 148; *Skidmore v. Bradford*, L. R. 8 Eq. Cas. 134; *James v. Clough*, 25 Mo. App. 147; *Swain v. Hill*, 30 Mo. App. 436. (2) The adjudication by the probate court did not revoke the promise. It is said in appellant's brief that the site was not purchased until February, 1895, and Mr. Shiedley was adjudicated of unsound mind and a guardian appointed in October, 1894, and that "these facts cause a revocation of the gift." Death or insanity has the effect of revocation only in cases where, before the occurrence of such event no expense or liability has been incurred or nothing done by the promisee upon the faith of the promise. (3) This is not a technical subscription. But the question of liability upon a subscription is determined by the same rules which must govern the controversy in the case at bar. It is immaterial whether there be many promisors or one. In either case the consideration for the agreement must be found in some benefit to the promissor, or in some expense incurred or something done by the promisee upon the strength of the undertaking. *Cottage Street Church v. Kendall*, 121 Mass. 528; 1 Parsons on Contracts [8 Ed.], side page 453. (4) The board was under no duty to proceed with the library enterprise before the making of Mr. Sheidley's promise. (5) But it is believed that even if no expenses or liability had been incurred by the plaintiff, payment of the notes in suit could be enforced unless it were shown that the plaintiff had abandoned the contemplated enterprise. The plaintiff was authorized by law to receive gifts for this purpose. Session Acts 1891, p. 205; *Pitt v. Gentle*, 49 Mo. 74; *Garrigus v. Society*, 3 Ind. App. 91; *Canal Commissioners v. Perry*, 5 Ohio, 57; *Ohio Wesleyan College v. Love's Ex'r*, 16 Ohio St. 20; *Collier v. Education Society*, 5 B. Mon. 68. (6) The delivery of the notes to the board was complete. Unless it was

essential to delivery that the notes pass to the actual manual possession of some member of the board there was a good and legal delivery of them to the board. On the evening of March 8, Mr. Sheidley was proposing to make a delivery of the notes to one of the members of the board present at that interview. That intention was only frustrated by the fact that there were no blank notes found in his office when he looked for them. It was suggested by Mr. Yeager, the president of the board, that he execute them in the morning and leave them with Mr. Tomb. Mr. Sheidley assented to that. "He said he would execute the notes in the morning and leave them there with Mr. Tomb, that we could go and get them whenever we wanted them." *Richardson v. Lincoln*, 5 Metc. 201; *Welch v. Dameron*, 47 Mo. App. 221. (7) Evidence as to Mr. Sheidley's resources was admissible in rebuttal. *Cartwright v. Cartwright*, 1 Phillim. 90; *Patterson v. Patterson*, 6 Serg. & R. 54; *Bette v. Jackson*, 6 Wend. 173; *Davis v. Calvert*, 5 Gill & J. 269. (8) Complaint is made that this evidence was admitted without qualification or instruction. If the defendant wished the effect of the evidence limited, he should have asked an instruction for that purpose. *Garesche v. St. Vincent's College*, 76 Mo. 332; *Standard Milling Co. v. Transit Co.*, 122 Mo. 258; *Wright v. Gillespie*, 43 Mo. App. 244. (9) Manual possession of the notes by the plaintiff was not necessary to the maintenance of the action. *Taylor v. Thomas*, 13 Kas. 217; *Couch v. Meeker*, 2 Conn. 302; *White Star Line Co. v. Morange*, 91 Ala. 610; *Hughes v. Thistlewood*, 40 Kas. 232; *Lessee of Shirley v. Ayres*, 14 Ohio, 307; *Prutsman v. Baker*, 30 Wis. 644; 1 Parsons, Notes and Bills, 51.

MACFARLANE, J.—Plaintiff, a public school corporation, sues the defendants, as executors of George Sheidley, deceased, upon three promissory notes dated March 9, 1894, each for $5,000, payable respectively, six, twelve and eighteen months after date, one of which is as follows:

"$5,000.00.        Kansas City, Mo., March 9, 1894.

"Six months after date I promise to pay School District of Kansas City, Missouri, or order, at the Union National Bank, Kansas City, five thousand dollars, for value received, with interest  *  *  *  at the rate of no per cent. per annum.  GEORGE SHEIDLEY."

By answer defendants admit the execution of the notes, but set up as defenses:  *First*, that, at the time of their execution, the testator was of unsound mind and incapable of making them;  *second*, that they were wholly without consideration; and  *third*, that they were never delivered.  The case was tried to a jury and a verdict was found for the plaintiff on all three counts, judgment was rendered in accordance therewith, and defendants appeal.

On the question of want of capacity of deceased to make the notes, defendants assign no error, but agree that that issue was fairly tried.

The evidence shows that the building occupied by the school district for a library was regarded as wholly insufficient, and for several years prior to the execution of these notes the erection of a new building had been under consideration by the board of education. For the purpose of purchasing a site, and erecting the building, an issue and sale of bonds of the district had been contemplated.

Previous to this transaction, George Sheidley had expressed an intention of making a donation of $25,000 to the district, to be used in the purchase of

books. About this time the board came to the conclusion that the proceeds of bonds could not be lawfully applied to the purchase of a site for the building, and there being no other funds with which to make such purchase, it concluded that the enterprise would have to be abandoned. Sheidley, being informed of the difficulty and probable failure of the enterprise for want of means to purchase a site, advised the board of his willingness to allow it to use the intended donation in any manner it saw fit.

A meeting between him and a committee of the board was held, and his proposed donation for that purpose was accepted. Sheidley, at the time, did not have the ready money, but proposed giving his notes to the district payable in the future, but promising that they would be paid whenever the money was needed. It was thereupon agreed that he should make five notes of $5,000 each, payable to the district, and, as he was expecting to leave Kansas City the next morning, he agreed to place them in the hands of Thos. B. Tomb, for the board, to be handed to it when called for. The next morning, March 9, 1894, he executed the notes and delivered them to Tomb as agreed, and informed the president of the board that he had done so.

A meeting of the board was immediately called, and the president made the following report of what had been done.

"Since recess was taken last Thursday evening we have, in company with J. C. James and J. V. C. Karnes, called on Mr. George Sheidley, who had heretofore offered to give $25,000 towards buying books for use in the library building to be erected, and owing to the embarrassment of the board about securing a site for said building, Mr. Sheidley agreed to change the form of his donation and was willing to allow this sum

to be used in such way as the board might deem best to secure the erection of said building, and to make sure of such offer he has placed said sum in the hands of Thomas B. Tomb to be held for this board and to be turned over whenever the board may call for the same to be used in securing said building.''

A vote of thanks was thereupon tendered to Mr. Sheidley, for his liberal donation, and the following resolution was adopted:

''WHEREAS, In the judgment of this board it is expedient that the school district borrow $200,000 for the purpose of erecting a public library building, containing the offices of the board of directors of the school district, and to issue therefor the bonds of the district, therefore,

''*Resolved*, That there be submitted to the qualified voters of the school district of Kansas City, in the county of Jackson and State of Missouri, at the biennial election for school directors to be held on the 3rd day of April, 1894, a proposition authorizing the board of directors of said school district to borrow on behalf of the school district the sum of $200,000 for the purpose of erecting a public library building, containing the offices of the board of directors of the school district, and for the payment thereof to issue the bonds of the school district. Such bonds to be of the denomination of $1,000 each, dated July 2, 1894, payable twenty years from their date, with interest at the rate of four per cent per annum, payable semi-annually on the second days of July and January in each year, both principal and interest payable in gold coin of the United States of America in the city and State of New York.

''*Resolved*, That the president and secretary of the board be and they are hereby authorized and directed to sign and publish, according to law, notice of the

submission of such proposition, and to take all other necessary steps for the proper submission thereof, in accordance with the terms of this resolution."

In pursuance of this resolution an election was held which resulted in an almost unanimous vote in favor of borrowing $200,000 for the purpose of erecting a public library building. Bonds were thereafter issued and sold and the proceeds were placed in the hands of the treasurer. This was all concluded July 14, 1894. Mr. Sheidley was taken sick about the first of July, 1894, and was thereafter, until his death, incapable of attending to business.

On the fourteenth of July, 1894, the president of the board demanded the notes of Tomb, who declined to deliver them, on account of objections by members of Sheidley's family. The board afterward, in February, 1895, purchased a site for $30,000, $5,000 of which was paid in cash, out of the general revenues of the district, and assumed mortgages on the land, extending over a number of years, for the balance of the purchase price. The board thereupon proceeded in the erection of the building.

At the request of the plaintiff the court gave the jury the following instructions:

"1. You are instructed that in order to constitute a consideration for the notes in suit, it is not necessary that George Sheidley should have himself received, or have expected to receive, any benefit on account thereof. But, if you believe from the evidence that the plaintiff, through its board of education, relying upon the fact that the five notes had been executed and left with Mr. Tomb, incurred and paid expense in connection with the submission to a vote of the people of the question as to the issue of the bonds of the district, and other expenses in connection with the issue of the bonds, and did incur a liability of $200,000 by

the issue and sale of the bonds and that said action of the plaintiff, through its board of education, was induced by the promise of the defendant to execute said notes and by his subsequent execution thereof and that the purpose of defendant in making said promise and executing said notes was to enable and induce the plaintiff to take such action, this constitutes a good consideration for the notes.

"2. The jury are instructed that to constitute a delivery of the notes in suit it was not necessary that they should be placed by the defendant himself in the hands of any member of the board of education. But, if you believe from the evidence that in pursuance of an arrangement and a promise to that effect, made by George Sheidley to Messrs. Yeager, Karnes, and James on the evening of March 8, 1894, he did on the next day execute the notes and leave them with Mr. Tomb, for the board of education, with instructions to him to hand them to the board when any of its members should call for them, intending thereby to place them at the disposal of the board of education, this constitutes in law a complete delivery of the notes to the plaintiff."

Defendants requested and the court refused to give the following instructions:

"1. The jury are instructed that a promissory note is but the promise to pay money in the future, and if made and delivered purely as a gift, is without consideration, and can not be enforced against the maker. Such a note is but a promise to make a gift in the future.

"2. The only act claimed to have been done by plaintiff upon the strength of the verbal promise of George Sheidley to give $25,000 is the submission for the voting of certain of its bonds for which plaintiff received full value.

"3. The jury are instructed that although it may be the fact that plaintiff would not have submitted the proposition to vote for bonds to build a library building, except for a promise on the part of George Sheidley to give $25,000, yet you are instructed that such submission constitutes no consideration for the notes referred to in the petition.

"4. The jury are instructed that at the time George Sheidley signed the notes sued on there was no subsisting liability on the part of said Sheidley to the plaintiff, and hence there was no consideration for said notes, and your verdict must be for defendants.

"5. The jury are instructed that the notes sued on are in the possession of one Tomb, and always have been, and that, therefore, plaintiff is not the holder thereof, and hence your verdict must be for defendants.

"6. Under the pleadings and the evidence your verdict must be for the defendants."

I. The substantial and most important controversy in this case is, whether under the evidence, any consideration for the notes sued upon was shown. It is conceded by plaintiffs' counsel that Sheidley received no benefit for his promises which can be regarded as a sufficient consideration to support them.

That the notes were intended by the maker, and accepted by the payee, as voluntary donations, is unquestioned. "It is essential to a gift that it goes into effect at once, and completely. If it regards the future it is but a promise, and being a promise without consideration, it can not be enforced, and has no legal validity. *Spencer v. Vance*, 57 Mo. 429; *Tomlinson v. Ellison*, 104 Mo. 105.

That the note of a donor to a donee is not the subject of a gift is well settled law. Such a note is but the promise of the donor to pay money in the future. The gift is not completed until the money is paid.

There is no delivery of the gift, but a mere promise to deliver in the future. Such a note, treated purely as a gratuitous promise, can not be enforced either in law or equity.

The question then is, can these notes be enforced as valid contracts, notwithstanding Sheidley received no benefit therefrom, and intended them as purely gratuitous donations? If so there must have been a legal consideration moving from the district to him. To constitute such consideration it is not essential that Sheidley should have derived some benefit from the promise. The consideration will be sufficient to support the promise, if the district expended money and incurred enforcible liabilities in reliance thereon. If the expense was incurred and the liability created in furtherance of the enterprise the donor intended to promote, and in reliance upon the promises, they will be taken to have been incurred and created at his instance and request, and his executors will be estopped to plead want of consideration. The gratuitous promises will thus be converted into valid and enforcible contracts. *Brooks v. Owen*, 112 Mo. 251; *Koch v. Lay*, 38 Mo. 147; *Steele v. Steele*, 75 Md. 477; *University v. Estate of Livingston*, 57 Iowa, 307; *Simpson College v. Tuttle*, 71 Iowa, 596; *Trustees v. Garvey*, 53 Ill. 401; *Amherst Academy v. Cowls*, 6 Pick. 427; *Pitt v. Gentle*, 49 Mo. 74; *Richelieu Hotel Co. v. International Encampment*, 140 Ill. 248.

Mr. Parson says: "On the important question, how far voluntary subscriptions for charitable purposes, as for alms, education, religion, or other public uses, are binding, the law has in this country passed through some fluctuation, and can not now be regarded as on all points settled. Where advances have been made, or expenses or liabilities incurred by others in consequence of such subscriptions, before any notice of

withdrawal, this should, on general principles, be deemed sufficient to make them obligatory, provided the advances were authorized by a fair and reasonble dependence on the subscriptions; and this rule seems to be well established. And the expenses or liabilities need not have been incurred by the plaintiff if others of the subscribers incurred them on the faith of the defendant's subscription." 1 Parsons on Contracts [8 Ed.], side page 453.

In *Koch v. Lay, supra*, WAGNER, J., says: "Where notes are given by one or more persons to any corporation or other legal person, or any trustees, by way of voluntary subscription, to raise a fund to promote an object, these notes are open to the defense of want of consideration, unless the payee has expended money, or entered into engagements, which, by a legal necessity, must cause loss or injury to the payee if the notes are not paid. There are many cases which hold that gratuitous promises may be enforced, where they have operated to induce engagements and liabilities, within the knowledge of the promisor. Incurring expense, and assuming liabilities in consequence of the promise, is regarded as a sufficient consideration for the promise."

It appears from the evidence beyond any reasonable controversy, we think, that while the board of directors regarded the erection of a building for a public library, in connection with the schools of the district, to be of great public need, yet it had wholly abandoned the enterprise, for the reason alone that it had not on hand, and could not procure, the means necessary for purchasing the land on which to build it. At this juncture Mr. Sheidley made his offer to donate $25,000 to the district to be used by the board of directors, in such way as it might deem best to secure the erection of said building. This offer was accepted, and the notes in suit were executed and placed in the

hands of Tomb, as hereinbefore stated. Sheidley knew perfectly well the difficulty under which the board was placed, and his intention unquestionably was that the money, when paid, should be applied to the purchase of a site for the building, and that the enterprise should go on at once.

The board of directors, relying upon these promises, immediately submitted to a vote of the district a proposition to borrow $200,000 and issue the obligations of the district for its payment. The election was held at an expense to the district of about $550. The bonds were thereafter issued and sold and valid obligations of the district were thereby created for $200,000.

Under the well settled principles of law above stated the notes are supported by a sufficient consideration. In reliance on the promises, and in furtherance of the public enterprise they were intended to promote, the district in good faith expended a considerable sum in holding an election, and incurred presumably a valid indebtedness for a large amount. The expenditure incurred and the indebtedness created, were necessary in order to secure money for the erection of the building. This necessity was well known to Sheidley when he executed the notes.

II. It appears from the evidence that Sheidley was adjudged insane in October, 1894, and that the site for the building was not bought until February, 1895. From these facts it is argued that the promises were revoked before the site was purchased, and there was, therefore, no consideration for the notes. It can not be said that the purchase of a site and the erection of the building were independent enterprises. They constituted but one undertaking, namely, that of securing a library building. The notes became valid and irrevocable contracts as soon as the district, relying upon their payment, expended money or incurred liability

School District v. Sheidley.

in promoting the general enterprise. This occurred before Sheidley was adjudged insane, and his insanity or death thereafter could not revoke them.

III. The purchase of the site before the notes were collected could not effect a revocation of agreements which had become valid and binding obligations before that time, though the application of the proceeds had been expressly limited to the purchase of the site, for the reason that the purchase price has not yet been paid. The proceeds are still to be applied to such purchase. But it does not appear that any such condition was imposed. The board of directors were given the discretion to use the proceeds in such way as it might deem best, in order to secure the erection of the building. There would be no misapplication of the funds, under the conditions of the gift, though applied to the construction of the building.

IV. It is also insisted that there was no consideration for the promises for the reason that the erection of the building was legally incumbent on the board, and the voluntary performance of an act which was legally incumbent on the party to perform, is not in law a sufficient consideration. This contention has a sufficient answer in the fact that no imperative legal duty rested upon the board to provide a library building. The board of directors is given the power to establish and maintain libraries, but it is not made its duty to do so. The discretion is to be exercised by the board in view of all the circumstances and conditions. R. S. 1889, secs. 8109, 8112.

But boards of education are given express power to accept gifts for the erection of library buildings. Acts of 1891, page 205. Though they may determine to provide a library, the character and cost may be determined by the voluntary aid they may receive, or be promised. Work done, or expenses incurred, in

reliance upon promises to give in the future, would as well furnish a consideration for such promise, as it would if the entire enterprise depended upon the promise. We think the consideration for the notes sufficient, and find no error in giving and refusing instructions on this branch of the case.

V. We think there was a 'sufficient delivery of the notes. It was not essential that the actual manual possession should have passed to some member of the board in order to effect a delivery. A constructive delivery was sufficient. All that was necessary was that the control of the notes should have passed from Sheidley with his consent, and that they should have been placed by his direction under the power and control of the board of education. Daniel on Neg. Inst., sec. 63*a; Richardson v. Lincoln*, 5 Metc. 201; *Welch et al. v. Dameron,* 47 Mo. App. 227.

The evidence shows that the notes were placed by Sheidley in the hands of Tomb, with directions to hand them to the board when called for. This was done pursuant to a previous agreement had with the board. Tomb testified that when the notes were handed to him Mr. Sheidley said: "Whenever the board of education called for them I should give them to them." The instruction on the question of delivery properly declared the law.

VI. Defendants insist that if the board of education was induced to order and hold an election, and to issue the bonds of the district, by the promise of Sheidley to give $25,000 in furtherance of the enterprise, then such promise is void as being contrary to public policy.

It is undoubtedly the policy of the law that all public officers should be uninfluenced and unbiased in the discharge of their official duties, and, as said by Mr. Bishop: "Any contract between an officer and a

private person, by which the former undertakes to do anything of official duty, right or wrong, in accord with such duty or contrary to it, is in a greater or less degree an obstruction to the unbiased exercise of his office, even where it does not influence him corruptly; therefore it is void." Bishop on Contracts, sec. 500. But we are unable to see that the sound policy of the State was violated in this action of the board, all the circumstances being considered. The action of the board was not induced by the promises of Sheidley in the sense that its judgment and discretion were influenced thereby. The board had, before that, exercised its judgment and determined the desirability of a new public library building. The obstacle in the way of voluntary action was the need of money to purchase a site. Its conclusion and the only obstacle in the way of carrying it out, were well known. The promises of Sheidley only empowered the board to act upon its judgment already formed and publicly declared. It made the way clear for the board to perform what it considered a public duty. We can see nothing in the action of the board of education calculated to control or influence its duty to the public, or which is the least immoral in its tendency. The policy of the State, by express law, favors and encourages donations for the erection of public library buildings, and we can see nothing inconsistent with the free, honest and impartial exercise of official discretion for a board of education to regulate its actions to some extent, with reference to the amount, value and character of voluntary contributions, whether made or promised.

The fact that the statute gives power to boards of education to establish and maintain libraries for the use of the public school districts thereof, is a recognition by the State of their utility and desirability; and the

only question boards really have to deal with, is the ability of the district to establish and maintain them. Boards must necessarily be influenced, more or less in their actions by the private contributions that may be secured or promised.  Such action, when not otherwise influenced, can not be regarded as contrary to public policy.

VII.   It is insisted by plaintiff, that the illegality of the contract, not having been pleaded as a defense, the question should not be considered on this appeal. The rule is that if a plaintiff, in order to make out his cause of action, is required to show that the contract sued upon is, for any reason, illegal, the court should not enforce it whether pleaded as a defense or not. But when the illegality does not appear from the contract itself, or from the evidence necessary to prove it, but depends upon extraneous facts, the defense is new matter and must have been pleaded in order to be available.   *Musser v. Adler*, 86 Mo. 445; *St. Louis A. & M. Ass'n v. Delano*, 108 Mo. 217.

In this case defendants pleaded want of consideration, and the notes are concededly mere gratuitous promises to pay in the future.  The notes were therefore void as gifts.  In order to prove that they were valid contracts, supported by a sufficient consideration, it became necessary for the plaintiff to prove the entire transaction between Sheidley and the board of education, and the subsequent action of the board taken in reliance on the promises.  If the notes had been illegal, as against public policy, the fact was necessarily disclosed by plaintiff in making out its case, and it would have been the duty of the court to deny its assistance whatever the condition of the pleading. The question was therefore sufficiently raised by the instruction in the nature of a demurrer to the evidence to require its consideration on appeal.

VIII.  Evidence was admitted on the trial, over the objection of defendants, that Mr. Sheidley was a man of large means.  This evidence was clearly inadmissible on the issue raised upon the defense that the notes were without consideration.  But the defense was also made that, at the time the notes were executed, defendants' testator was of unsound mind and incapable of transacting business.  The notes amounted to $25,000, a very large sum to give away, and for a man of moderate circumstances, would have furnished a circumstance tending to prove want of capacity.  To rebut that tendency evidence that he was a man of wealth, was admissible.  If defendants wished to limit the effect of the evidence they should have asked an instruction for that purpose.  *Garesche v. St. Vincent's College*, 76 Mo. 332; *Standard Milling Co. v. Transit Co.*, 122 Mo. 273.

The judgment is affirmed.  BARCLAY, C. J., GANTT, SHERWOOD, BURGESS, and BRACE, JJ., concur.  ROBINSON, J., dissents.