MISSOURI WESLEYAN COLLEGE, a Corporation, v. W. P. SHULTE, Executor of the Estate of ADDA BRUNTMYER, Appellant.—142 S. W. (2d) 644.

Division One, August 16, 1940.

*J. H. Pettijohn, John R. Eiser* and *R. H. Musser* for appellant.

*C. H. Harrison* and *Petree & Wright* for respondent.

630

BRADLEY, C.—This cause was commenced in the Probate Court of Holt County, and is based on a claim of Missouri Wesleyan Col-

lege, in the principal sum of $10,000, against the estate of Adda Bruntmyer, deceased. Claimant appealed to the circuit court from the finding and judgment of the probate court, and in the circuit court, at trial without a jury, the claim was allowed in full, plus interest, and from the judgment entered the executor of the estate appealed. Hereinafter we refer to the claimant as plaintiff and to the executor as defendant.

Plaintiff has filed motion to dismiss the appeal on the ground that defendant's abstract does not comply with our Rule 13 in that (as claimed) it does not "set forth a copy of so much of the record as is necessary to be consulted in the disposition of the assigned errors." We do not think that the abstract offends sufficiently against Rule 13 to justify dismissal of the appeal, hence the motion is overruled.

Defendant makes eleven separate assignments, but all are, in effect, embraced in the assignment on the refusal of a demurrer to the evidence at the close of the case.

Missouri Wesleyan College, prior to its closing (May 5, 1930), was located at Cameron, Missouri, Clinton County, and offered and gave a four years college course from 1897 to 1926, and a two years college course from 1926 until it closed. A campaign, ending midnight May 9, 1918, was put on to raise money for the college, and during that campaign, and on April 15, 1918, Fred and Adda Bruntmyer (husband and wife) signed the instrument upon which this cause is based, which instrument is as follows:

"Missouri Wesleyan College        Board of Education
     $435,000                           15,000
     Estate Pledge                 April 15, 1918
        Missouri Conference Educational-Jubilee Campaign."

"In consideration of my interest in Christian education and in consideration of others subscribing, for the purpose of providing one-half million productive endowment, and paying all indebtedness in behalf of Missouri Wesleyan College, located at Cameron, Missouri, and for the general work of the Board of Education of the Methodist Episcopal Church, as herein specified, I hereby subscribe and will pay to the trustees of Missouri Wesleyan College of Cameron, Missouri, ten thousand dollars ($10,000.00), which sum shall become due one day after the decease of the last survivor and shall be payable out of their estate, the same being subscribed under the following further terms and conditions, namely:

"1. This subscription shall become binding and a bona fide obligation when the total asking of $450,000, including all amounts subscribed, since April 1, 1916, shall have been secured by midnight of May 9, 1918. Official findings of executive committee (of the college) shall be final.

"2. Each of the above institutions in interest shall share pro

rata as cash is received from subscriptions secured on a basis of 95.7% and 4.3%.

"Fred Bruntmyer
"Mrs. Adda Bruntmyer."

Fred Bruntmyer died December 26, 1933; Adda died July 23, 1934, and demand was filed in the probate court November 8, 1934.

Defendant relies on three propositions: (1) That plaintiff cannot maintain this cause; (2) that there was a total failure of consideration; and (3) that Adda Bruntmyer, prior to her death, revoked the subscription. The first proposition is based on three separate contentions: (1) That the subscrpition instrument is made payable to *the trustees*, and for that reason the college, under its corporate name, cannot prosecute the cause; (2) that prior to commencing the cause, plaintiff was merged with Baker University, Baldwin, Kansas, and that whatever interest plaintiff had in the subscription instrument passed to Baker University; and (3) that plaintiff and the Board of Education of the Methodist Episcopal Church (hereinafter referred to as the Board of Education) are to share pro rata in the subscription, and that, such being so, plaintiff, in no event, can, alone, maintain this case.

Plaintiff is a corporation, and "a conveyance to the trustees of a corporation without naming them vests title in the corporation." [14A C. J., p. 519, sec. 2410; North St. Louis Christian Church v. McGowan et al., 62 Mo. 279; Keith & Perry Coal Co. v. Bingham, 97 Mo. 196, l. c. 211, 10 S. W. 32.] The North St. Louis Christian Church case was an action by an incorporated church to recover from a bank, and was based on a deposit made by the treasurer of the church. A minority of the congregation claimed to be the original church and owner of the fund and interpleader. In that case it is said [62 Mo. l. c. 288]:

"It has been contended, that the corporation cannot maintain this action in its own name, and that if it is maintainable at all, it should have been brought in the name of the trustees. But this argument is founded upon an obvious error. Religious incorporations are aggregate corporations, and whatever property they possess or acquire is vested in the body corporate. It is true the officers have it under their control or dominion, but their possession is the possession of the artificial person whose agents they are. Although called trustees, they do not hold the property in trust. Their right to intermeddle with or manage the property is an authority, and not an estate or title. They have no other or greater possession than the directors of a bank in a banking establishment. The whole title or estate is vested in the incorporated body, and the corporation is the proper party to sue."

In the Keith & Perry Coal Company case (97 Mo. l. c. 211, 10 S. W. 32), the court said: "It is also insisted that, although the church

had become a separate body when Moore executed his deed conveying the lot in dispute to 'The Trustees of the First Baptist Church of Kansas City, Missouri,' said deed was ineffectual to vest the title of the lot in the corporation. In support of this contention, we have been cited to a line of cases which hold that when a conveyance is made to certain named persons as trustees of a corporate body that the effect of such conveyance is to vest title in them as trustees, but that is not this case. Here the conveyance is made to the trustees, etc., without naming them or any of them, and in such case the title vests in the corporation named in the deed.''

Plaintiff college was conducted by a board of trustees who were appointed by the Missouri Annual Conference of the Methodist Episcopal Church, which was also a corporate entity. And whatever business affairs plaintiff has had, before and since it ceased to operate as a college, have been conducted by its board of trustees. We do not think that the mere fact that the instrument, here concerned, is made payable to the trustees, precludes plaintiff from prosecuting the cause in its corporate name.

Does the merger of plaintiff with Baker University preclude the prosecution of this cause by plaintiff? Defendant relies upon Sec. 698, R. S. 1929, Ann. Stat., p. 900, which section provides that ''every action shall be prosecuted in the name of the real party in interest,'' except actions by administrators, executors, and trustees of an express trust as provided in Sec. 699, R. S. 1929.

Plaintiff contends that the Bruntmyer subscription ''is not and never was'' transferred to Baker University, but says that even though the beneficial interest therein was transferred by the merger, plaintiff nevertheless, under the facts, can prosecute the cause, citing, in support of this contention, 8 C. J., p. 829; Nicolay v. Fritschle, 40 Mo. 67; Rogers et al. v. Gosnell, 51 Mo. 466; Snider v. Adams Express Co., 77 Mo. 523.

Among the resolutions, respecting the merger, adopted by plaintiff's board of trustees was this: ''It is further resolved that the title to all endowment funds, scholarship funds, annuities, etc., which are now in the possession of the treasurer of Missouri Wesleyan College, or which may hereafter come into his possession, are hereby transferred and vested in the trustees of Baker University. . . .''

Dr. Wallace B. Fleming, president of Baker University at the time of the merger, testified that the Bruntmyer subscription was ''not the property of Baker University.'' Frank W. Wolf, treasurer of Baker University at the time of the merger testified: ''Q. What did you have to do with the transfer of the securities, and whatever it was that was turned over to Baker University? A. I received them, checked them over, and gave receipt for them. Q. Where did you receive them? Where did you go to? A. Cameron. Q. You went to Cameron and checked them over—I hand you a paper marked

plaintiff's exhibit number 1 (Bruntmyer subscription) and I will ask you whether or not that was in the list that was turned over to you? A. It was not."

The trial court found "that plaintiff, at the time of filing its claim had, and now has, the legal title to the note (Bruntmyer subscription) sued on in this suit." In the situation we hold that the merger does not preclude plaintiff from maintaining the cause.

■ Is the Board of Education a necessary party? The Missouri Annual Conference of the Methodist Episcopal Church "supervises the business affairs of the educational institutions within its jurisdiction," and among these institutions was plaintiff. We think the reasons given, supra, as to why it is not necessary to prosecute this cause in the name of the trustees of plaintiff college are applicable here. The question of division between plaintiff and the Board of Education is, we think, for them.

■ Was there a failure of consideration? Sec. 2958, R. S. 1929, Ann. Stat., p. 1824, provides that "all instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other, or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration, and be due and payable as therein specified." The language "import a consideration," as used in the statute means, in the absence of evidence on the point, that it will be presumed that there was a sufficient consideration and the burden of proof on the question is on the party denying the existence of consideration. [Smith et al. v. Ohio Millers' Mut. Fire Ins. Co., 330 Mo. 236, 49 S. W. (2d) 42, l. c. 45, and cases there cited; Scottish Rite Temple Assn. v. Lucksinger, 231 Mo. App. 486, 101 S. W. (2d) 511.] In the present case, the trial court made a finding of facts, and, on the subject of consideration, found that the subscription instrument, on its face, imports a consideration, and, in addition to this, the court found (1) that there were subscriptions made by others; (2) that the college operated for years after the Bruntmyer subscription, and large amounts of money were expended "in the operation of the college on the strength of this and other like subscriptions;" and (3) that, relying on the Bruntmyer and other subscriptions, the college incurred liabilities.

The considerations recited in the subscription instrument are the interest of the Bruntmyers in Christian education and the concurrent subscriptions of others. In Scottish Rite Temple Assn. v. Lucksinger, supra [101 S. W. (2d) l. c. 513], it is said: "That the note of a donor to a donee is not the subject of a gift is well-settled law. Such a note is but the promise of the donor to pay money in the future. The gift is not completed until the money is paid. There is no delivery of the gift but a mere promise to deliver it in the future. Such a note, treated purely as a gratuitous promise, cannot be enforced, either in law or in equity. . . . However, such a gratuitous promise

may be converted into a valid and enforcible contract, at least where made to a public or charitable institution or the trustees therefor for the promotion of a public or charitable purpose, if, before it is withdrawn, the promisee *performs some act, expends some money, or incurs enforcible liabilities* in the furtherance of such purpose in reliance on said promise'' (italics ours).

Defendant contends, in effect, that there is no substantial evidence that plaintiff, relying on the Bruntmyer subscription, performed any act, or expended any money, or incurred any liabilities.   H. F. Lawrence, president of plaintiff's board of trustees at the time of the 1918 campaign, and at time of the trial, testifying as to the financial condition of the college at the time of the campaign, said that college expenses were ''so great that the income from the studnt body as tuition was not enough to pay the expenses, so that without subscriptions of some kind, we would have been unable to run the school, and would have been compelled to close. . . .   Well, this (Bruntmyer subscription) with other subscriptions enabled us—we had potential assets on which we could borrow money, and expect to be able to return the borrowed money, so we could keep the school open, because some of these subscriptions were being paid in all of the time, and, of course, others were expected to be paid in at different times. Q.   You know the others you were expecting to be paid in, and you relied on that?   A.   Yes, sir.''

There was no direct evidence that plaintiff incurred liabilities, specifically relying on the Bruntmyer subscription, but regardless of whether liabilities were so incurred, it appears from Lawrence's evidence that after the campaign, in which the Bruntmyers subscribed, the college continued for twelve years, and in reliance on the Bruntmyer and other subscriptions, spent considerable money in furtherance of Christian education.

In 60 C. J., p. 956, sec. 11, it is said: ''Consideration being necessary to support a subscription, and it being the tendency of the courts to favor these contracts in this regard, it is generally held that, where the promisee, in reliance on the subscription, has assumed the performance of some duty, or has performed services, *or has done work or expended money,* a consideration is thereby furnished for the subscriber's promise; and the gratuitous promise is converted into a valid and enforcible contract'' (italics ours).

Supporting the italicized part of the text quoted, and cited by said text, are the following Missouri cases:   Kansas City School District v. Sheidley, 138 Mo. 672, 40 S. W. 656; Corrigan v. Detsch, 61 Mo. 290; Pitt et al. v. Gentle, 49 Mo. 74; Workman v. Campbell, 46 Mo. 305; Trustees of Westminister College v. Estate of Gamble, 42 Mo. 411; Koch v. Lay, 38 Mo. 147; Heinrich et al. v. Mo. & Ill. Coal Co., 102 Mo. App. 229, 76 S. W. 674; Trustees of Christian University v. Hoffman, 95 Mo. App. 488, 69 S. W. 474; Swain et al. v. Hill,

30 Mo. App. 436; James v. Clough, 25 Mo. App. 147. See also, Hardin College v. Johnson, 221 Mo. App. 285, 3 S. W. (2d) 264.]

School District of Kansas City v. Sheidley, supra, was an action on three promissory notes, $5,000 each, made payable to the district, and as a donation in connection with a library building and the building site. Want of consideration was pleaded as a defense. Affirming a judgment for plaintiff the court said [138 Mo. l. c. 684, 40 S. W. 656]:

"Can these notes be enforced as valid contracts, notwithstanding Sheidley received no benefit therefrom, and intended them as purely gratuitous donations? If so, there must have been a legal consideration moving from the district to him. To constitute such consideration it is not essential that Sheidley should have derived some benefit from the promise. The consideration will be sufficient to support the promise, if the district expended money and incurred enforcible liabilities in reliance thereon. If the expense was incurred and the liability created in furtherance of the enterprise the donor intended to promote, and in reliance upon the promises, they will be taken to have been incurred and created at his instance and request, and his executors will be estopped to plead want of consideration. The gratuitous promises will thus be converted into valid and enforcible contracts," citing Brooks v. Owen, 112 Mo. 251, 19 S. W. 723; Koch v. Lay, 38 Mo. 147; Steele v. Steele, 75 Md. 477; University v. Estate of Livingston, 57 Iowa, 307; Simpson College v. Tuttle, 71 Iowa, 596; Trustees v. Garvey, 53 Ill. 401; Amherst Academy v. Cowls, 6 Pick. 427; Pitt v. Gentle, 49 Mo. 747; Richelieu Hotel Co. v. International Encampment, 140 Ill. 248.

Trustees of Baker University v. Clelland et al. (8th Cir.), 86 Fed. (2d) 14, was to cancel a $20,000 note and a deed of trust securing it. The note was one of the assets that passed, under the merger, from Missouri Wesleyan College, plaintiff here, to Baker University. The Federal District Court cancelled the note and deed of trust, but this decree was reversed by the Circuit Court of Appeals. In that case, the court considered, somewhat at length, the subject of subscription instruments, and quoted, with approval, the above excerpt from the Sheidley case.

In support of the assignment based on the alleged failure of consideration, defendant cites Thatcher et al. v. Lewis et al., 335 Mo. 1130, 76 S. W. (2d) 677; Jones v. Jones et al., 223 Mo. 424, 123 S. W. 29; Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59; Jones v. Patterson, 271 Mo. 1, 195 S. W. 1004; Trustees of LaGrange College v. Parker, 198 Mo. App. 372, 200 S. W. 663; Methodist Orphans' Home Association v. Sharp's Executor, 6 Mo. App. 150; Garner et al. v. Home Bank & Trust Co. et al., 171 Tenn. 652, 107 S. W. (2d) 223; Rutherford College v. Payne, 209 N. C. 792, 184 S. W. 827.

There is nothing, in any of these cases, relied on by defendant, like

or similar to the question here on the question of consideration, except the Methodist Orphans' Home, LaGrange College, the Garner, and the Rutherford College cases.

The Orphans' Home case, supra, was commenced in the probate court, and was based on a $1000 subscription in form as follows: "For the purpose of liquidating a debt of thirty-seven hundred dollars against the Methodist Orphans' Home of this city (St. Louis), we, the undersigned, agree to pay the amount placed opposite our names, upon the following condition, to-wit: It is hereby expressly agreed and understood that no subscription, nor any part thereof, shall be deemed due, payable, or collectible, until the whole sum of $3,700 shall have been raised or subscribed." The total subscription was $3810. In ruling that recovery could not be had, the court said: "They (the subscriptions) are honorable obligations, but they cannot be enforced, for want of a consideration. . . . The Methodist Orphans' Home had already contracted this debt when the subscription was made." It will be noted that there was not, in the Orphans' Home case, as there is in the present case, any question on work done or money expended on the faith of the subscription.

The LaGrange College case, supra, was also commenced in the probate court and was based on the following instrument.

"Endowment Note

"$1,000                                      Ewing, Missouri, June 7, 1912

"For value received and as a subscription to the endowment fund of LaGrange College located at LaGrange, Mo., I promise to pay to the trustees of said LaGrange College, the sum of one thousand dollars. Said sum to be paid out of my estate twelve months after my death, with interest from date at the rate of one per cent per annum. . . . H. C. Parker."

The ruling in the LaGrange College case is quite tersely and correctly stated in headnote No. 2 [198 Mo. App. 372] as follows: "A note given as a subscription to the endowment fund of a college was a mere promise of a gift and unenforcible, where no consideration was given for the note, either by expending money or incurring enforcible liabilities in reliance thereon, or in any other way, especially where it was payable out of the maker's estate after his death." The spending of money distinguishes the present case from the LaGrange College case.

Garner et al. v. Home Bank & Trust Co. et al., 171 Tenn. 652, 107 S. W. (2d) 223, concerned a devise to Trevecca College, Nashville, Tennessee, and the principal question was whether the devise had lapsed. Prior to the death of the testator, the college became insolvent and, in effect, ceased to exist. The court said [107 S. W. (2d) l. c. 225]: "The whole purpose of Mr. Garner's gift seems to have failed. Trevecca College cannot take it for the purpose indicated. It was evidently intended to help sustain that college as a going concern

and to further its educational purposes, which were no doubt very dear to the heart of Mr. Garner. To turn this property over to the receiver of Trevecca College at the present time would be only to assist it in paying debts. Mr. Garner has evinced no purpose in his will to assist a college in paying debts. His gift was to a holiness institution of learning and not to a receiver of such an institution. We therefore hold with the chancellor that this gift to Trevecca College has lapsed.'' It is apparent that the Garner case does not support defendant in the present case.

The Rutherford College case, supra, was an action to recover on the following note:

"Rutherford College, N. C.<br>
"October 26, 1927

''$300.00

''Five years after date, for value received, I promise to pay to the order of Rutherford College (incorporated) the sum of three hundred dollars, with interest from date at the rate of 6 per cent, payable annually.

''The consideration of the foregoing obligation is together with other subscribers and contributors mutually to provide, create and establish an endowment fund for the said Rutherford College, an institution dedicated to Christian education, said fund and endowment to be held by the said Rutherford College and used in the cause of Christian education; and it is provided that in the event of my death before the maturity of this bond and obligation, that the total sum herein pledged, both principal and interest, shall become at once due and payable. T. D. Payne.''

The defense in the Rutherford College case was that the consideration for the note had failed in that the college had become insolvent and had ceased to function, but by direction of the court, the jury found for the college. In granting a new trial, the Supreme Court of North Carolina said (184 S. E. l. c. 830): ''The jury should have been instructed by the court that, if they found from the evidence, the burden being upon the defendant, that at the commencement of this action the plaintiff was insolvent and was in process of liquidation for the purpose of its ultimate dissolution, that Rutherford College had been discontinued as a school owned and operated by the Western North Carolina Conference of the Methodist Episcopal Church, South, for the promotion of Christian education, and that the plaintiff by reason of its insolvency and of the discontinuance of Rutherford College as a school owned and operated by the Western North Carolina Conference of the Methodist Episcopal Church, South, for the promotion of Christian education, is now unable to hold and use an endowment fund for the promotion of Christian education, they should'' find for the defendant.

The Rutherford College case is also distinguishable from the present

case in that in that case there was no claim that money had been spent in reliance upon the subscription. It is our conclusion and we so rule that the defense of failure of consideration will not lie.

Was the pledge revoked? The claimed revocation was a letter from Mrs. Bruntmyer, addressed to E. C. Dorsey, but was intended for and was received by C. P. Dorsey, treasurer of plaintiff. The letter follows:

"1005-C North Grand Blvd.
"Glendale, Calif.
"May 7, 1934.

"Mr. E. C. Dorsey
"Cameron, Missouri
"Dear Mr. Dorsey:

"About seventeen (17) years ago Mr. Bruntmyer and I pledged $10,000 to Missouri Wesleyan College, of Cameron, Missouri, the same to be paid after our death.

"We made this pledge in good faith, not knowing what the future would bring to us. The past five years has brought many and great losses to us, in loans we had on real estate, and also in Mr. Bruntmyer's long illness and death. There were many hospital and doctor's bills to be paid, and the past three years he had to have a nurse day and night. He passed away December 26, 1933. I still have to have constant care, and with our greatly depleted income have found it necessary to call in some loans in order to meet my expenses. Consequently, since this pledge was made to Wesleyan College, at Cameron, Mo., and since the college is no longer in operation, I am cancelling the pledge made to the school 17 years ago.

"I am writing this in order that the amount be not considered in your future plans."

The general rule is that a subscription, such as hers, "is considered as a mere offer until the beneficiary has accepted it or has acted on the faith thereof so that his conduct implies an acceptance, and until such acceptance the promisor generally has the right to revoke the subscription. . . . But it is clear that after the beneficiary has incurred liabilities and expenses in acting upon the faith of the promise, the right of revocation is lost." [25 R. C. L., p. 1408, sec. 14.]

In a note, 17 Ann. Cas., p. 1076, the law on the subject of revocation is stated as follows: "In determining whether a subscription is legally enforcible, the courts have uniformly held that the subscription becomes irrevocable and enforcible when work is done or liabilities or expenses are incurred on the faith of it and in pursuance of the object for which it is made," citing Koch v. Lay, 38 Mo. 147; Workman v. Campbell, 46 Mo. 305; Corrigan v. Detsch, 61 Mo. 290; Kansas City School Dist. v. Sheidley, supra. [See also notes 38 A. L. R., p. 881; 95 A. L. R., p. 1308; 115 A. L. R., p. 591.]

We are constrained to rule that the attempted revocation came too late. The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.