BROOKS, *Appellant,* v. OWEN *et al., Appellants.*

Division Two, November 15, 1892.

112   251
65a  608
112   251
138  684

1. **Deed:** INCUMBRANCE: ESTOPPEL.   Where an incumbrance is not made a part of the consideration of an absolute conveyance, and is not deducted from it, and it is not assumed by the grantee, the recital in the deed that the conveyance is subject to an incumbrance does not estop the grantee from showing that the purported incumbrance is not one in fact because of its invalidity, or because it had been satisfied.

2. ———: ———: ———: DEED OF TRUST.   Where in such deed no price is fixed on the property, and the grantee did not in the deed or otherwise assume to pay the notes in dispute, and the notes themselves are without consideration to support them, the deed of trust cannot be enforced against such grantee.

3. **Note:** CONSIDERATION: LOVE AND AFFECTION.   A note given by a parent to a child or the reverse, in consideration of love and affection alone, cannot be enforced between the original parties or those claiming under them with notice.

4. ———: ———: ———.   Where a son gives his mother money towards the purchase of land for her, the execution of a bond and mortgage for the balance of the purchase price is not a valid consideration for a note from him to her. (See *infra* on motion for rehearing.)

5. **Equity**: SALE UNDER DEED OF TRUST: CLOUD ON TITLE. Equity has jurisdiction to enjoin the sale of land under a deed of trust, for the payment of a debt which has no consideration, on the ground that such sale would cast a cloud upon the title.

### ON REHEARING.

6. **Deed of Trust**: CONSIDERATION: MARRIED WOMAN: SEPARATE ESTATE. A son bought property as a present for his mother, had it conveyed to her, paid part of the purchase price, and by his promise to pay the remainder induced her to sign the bond and mortgage; she being authorized by the state of New York where she lived and the land was situated to bind her separate estate as a *feme sole,* no suit to charge such separate estate being necessary. *Held,* a consideration was thereby created sufficient to support, as against a purchaser with notice, notes secured by deed of trust on other land transferred by the son to the mother to protect her from liability on the bond and mortgage executed by her.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*L. P. Cunningham* and *Thomas Dolan* for Elias H. Owen *et al.,* appellants.

(1) The petition does not show any ground for equitable relief. (2) The only evidence for the plaintiff is his own, and, as the circuit court held, that was not sufficient. The testimony of Louis H. Owen outweighs it, and Owen is corroborated by many circumstances. (3) The plaintiff does not allege or testify to anything which constitutes fraud, for, according to his statement, he accepted the deed, relying upon Louis H. Owen in the future having the notes released. As shown by the authorities, this is not fraud. (4) The evidence that the plaintiff's lot was to be relieved of the two $5,000 notes in controversy was not admissible, for it tended to contradict and vary the deed, as well as the notes and deed of trust. (5) There

is no defense to the notes. Sophia C. Owen is the *bona fide* holder and owner, and entitled to collect them in full. (6) The decree should be so modified in this court as to award Sophia C. Owen the amount of the two $5,000 notes, with interest at eight per cent. per annum, since January 10, 1888. Revised Statutes, 1889, sec. 2304.

*Lathrop, Morrow & Fox* for H. C. Brooks, appellant.

(1) The finding of the court in favor of Sophia C. Owen to the extent of $1,500 is not warranted by the evidence. (2) The court committed error in admitting in evidence the New York bond and mortgage. Said bond and mortgage were void under the New York statutes, because Sophia C. Owen was at the time a married woman. (3) The court erred in overruling plaintiff's motion for a new trial.

THOMAS, J.—This is a suit to enjoin a trustee's sale and to cancel the deed of trust on which the sale was to have been made, and also to cancel two certain notes of $5,000 each, secured by said deed of trust. The decree was to the effect that the said notes and deed of trust be canceled upon the plaintiff paying into court $1,500 and interest, amounting to $1,699.50, for the use and benefit of defendant, Sophia C. Owen. The plaintiff paid the sum, as required by the decree, into court, but said Sophia C. Owen refused to accept any part of it. All parties, including both plaintiff and the defendants, have appealed.

I. The defendants' first contention that the petition wholly fails to state a cause of action is not well taken. The petition substantially sets out the facts

essential to the relief plaintiff seeks, which facts will fully appear in our consideration of the evidence.

II.   The evidence, as preserved in the bill of exceptions, discloses about this state of facts:   The defendant, Louis H. Owen, a son of defendants, Sophia C. and Elias H. Owen, was the owner of the real estate described in the petition, viz., lot 57, in Swope's addition to Kansas City, Missouri, and on the tenth day of January, 1888, wishing to raise money for his own use, made the two $5,000 notes in controversy to H. E. Dickinson, and secured them by a deed of trust upon said lot, of the same date as the notes, which deed of trust was duly recorded January 25, 1888.   Dickinson went from Kansas City to New York to sell the said notes, intending to turn the proceeds over to Louis H. Owen, but was not successful, and early in February, 1888, indorsed the notes in blank, without recourse, and turned them over to said Louis H. Owen.   The notes fell due five and seven months after date, drew interest at eight per cent. per annum from their date, and were negotiable.

Louis H. Owen, prior to these dates, had become indebted to the plaintiff on account of partnership transactions in Denver, Colorado, to the amount of about $25,000, and believing he was in failing circumstances and desiring to protect plaintiff, he executed to him a warranty deed for said lot.   The deed is dated April 2, 1888, recites a consideration of $70,000, and in the granting part uses this language: "Subject however to total incumbrances of fifty-eight thousand dollars ($58,000)," and in the warranty clause are these words: "Except incumbrances herein named, and taxes for 1888 and subsequent years."   Louis H. Owen filed this deed for record April 5.   The plaintiff was in Denver at the time, being a resident there, and knew nothing about the execution and recording of the deed

till Louis H. Owen informed him by telegram on the sixth day of April. He immediately went to Kansas City, arriving there April 7. When he got there he learned that Louis H. Owen was insolvent, and that this lot was all he had with which to secure him. Plaintiff investigated the matter to ascertain if it was advisable for him to accept the deed that had already been made and recorded. He found there was on the property undisputed incumbrances of $43,000; also a deed of trust to secure to Sheidly and Tomb $5,000, and the deed of trust in controversy, which, so far as the record showed, was to secure two notes of $5,000 each to H. E. Dickinson. These incumbrances aggregated $58,000, as recited in the deed. During the investigation, which lasted some days, Louis H. Owen and plaintiff had several interviews, in which Owen told him the deed of trust and notes in controversy were held by his mother, Sophia C. Owen, to secure to her the sum of $2,500, which he owed her, and which would be due in August, 1888, and that if this sum was not paid when due they were to become her absolute property. Plaintiff, about the last of April, concluded to accept and did accept the deed in payment of Louis H. Owen's indebtedness to him. Louis H. Owen tried to get Sheidly and Tomb to release the lot in controversy from their deed of trust for $5,000, but failed. After plaintiff accepted the deed, and before the institution of this suit, he paid large portions of the prior incumbrances on the land.

Sophia C. Owen and her husband, Elias H. Owen, lived in a rented house in Oswego, New York. Louis H., their son, visited them in July, 1887, and while there bought the property in which they lived for a home for them for the price of $2,000, paying $500 in cash and causing the deed to be made to Sophia C. Owen, who executed a mortgage and bond to secure to

the grantor the sum of $1,500, the balance of the purchase money.   When this property was bought, Louis told his mother he would pay for it in full, and make her a present of it for a home.   Louis and his mother both testified that she had raised money at various times to send him to school, and for other purposes, amounting in all to $600 or $700, but the most of it, if not all, was furnished while he was a minor, and neither party regarded it as a loan.   He became of age February 22, 1880.   For this, and on account of his relationship to her, he felt under obligations to furnish her a home. When Louis returned to Kansas City, he sent his mother his note for $2,500, dated about August 1, 1887, payable a year after date; $1,500 of this he intended for her to use in payment for the place, and the remaining thousand in putting the property in repair.   And this is the debt to secure which the notes in controversy were held by her.

In January, 1889, Sophia C. sent the two notes of $5,000 each and the deed of trust to Louis H., and he caused the property to be advertised for sale by the trustee, Elias H. Owen; and to enjoin that sale this suit was brought.

The great weight of the evidence is that the property at the time the deed to plaintiff was executed was not worth more than $50,000, and that there was no market demand for it.   The notes in controversy, subject as they were to prior incumbrances of $48,000, could not be negotiated in New York or Kansas City, and when Louis H. gave them to his mother, which was in February or March, 1888, he said: "Here mother, take these; you may get something, you may get nothing, and you may get it all."

The evidence shows also that Elias H., Sophia C. and Louis H. Owen were all insolvent, not only at the

time the suit was instituted and the time of trial, but
also in February and March, 1888.

Plaintiff and Louis H. Owen differ in their testi-
mony as to what was said between them in reference to
the notes in controversy prior to plaintiff's acceptance
of the deed.   Plaintiff says Louis H. told him that he
had control of the notes, and he would have them
released; and plaintiff says he would not have accepted
the deed, if he had known the property was to be held
for them; while the defendant says that he did not say
that he controlled the notes, but that he saw his
mother, who was then in Kansas City, and asked her
if she was willing to surrender them, and she refused,
which he reported to plaintiff, and that the plaintiff
after this accepted the deed as written and recorded.

The evidence further shows that plaintiff wrote
Louis H. Owen under date of July 16, 1888, as follows;
"If your mother has the notes that belong to the trust
deed to Dickinson, if you will please give me her
address and also a line to her, showing it is your wish,
I will write for them.   If either one of the notes are
payable to her order I would suggest she simply indorse
them in blank.   It may be possible I may be able to
use them, too, as security, if I should want to, and be
a great help to me."

On July 25, Louis H. wrote to plaintiff as follows:
"I have written mother to-day and inclose a line for
your introduction to her."   Sophia C. Owen testified
as follows:   "Mr. Brooks wrote me to send the notes
and trust deed to him, and Louis sent a line in the
letter asking that they be sent to Mr. Brooks, the
plaintiff.   I received that letter in the summer of
1888."

January 26, 1889, Louis H. Owen telegraphed
plaintiff as follows:   "Mother refuses to send notes.
Will you pay $2,875 for them?   Answer Sunday, sure."

On these facts the trial court held that Sophia C. Owen was entitled to hold the notes and deed of trust to secure the $1,500 she still owed on her New York home, with interest thereon amounting at the time of trial to $199.50, making $1,699.50 in all. This sum plaintiff paid into court, and the injunction was made perpetual. Both parties have appealed, the plaintiff claiming that Sophia C. Owen was not entitled to hold a lien on his property for anything, and that the court, therefore, erred in decreeing her a lien for the sum above named, and the defendants claiming that she was entitled to hold the property for the full amount of the two notes of $5,000 each and interest, and that the court, therefore, erred in giving her judgment for $1,699.50 only.

We will first consider the ground of defendant's contention, which is that the plaintiff is estopped by the recitals in the deed from Louis H. Owen to himself from asserting that the deed of trust in the hands of Sophia C. Owen is invalid and void as to him for want of consideration. There is no question that if plaintiff and Louis H. Owen had agreed on $70,000 as the consideration for this property, and the sum of $58,000 incumbrance had been deducted from the consideration thus agreed on, and plaintiff had expressly agreed to pay the $58,000, plaintiff could not say—ought not to say—that the holders of the incumbrance were volunteers, and, therefore, not entitled to enforce the security. Devlin on Deeds, sec. 1066; Jones on Mortgages [4 Ed.] secs. 1491–4. In that case it is unimportant whether the consideration be payable to the grantor or a third party, for there was a consideration, so far as the grantee is concerned, in the value of the land he acquired. But here no specific sum as the consideration of the sale was agreed on between the parties. The deed was a deed poll, and was executed and

recorded before plaintiff ever knew that Louis H. Owen was financially embarrassed, and the consideration of $70,000 was inserted therein by Owen without plaintiff's knowledge.    Owen says he estimated his indebtedness to plaintiff at $12,000 at the time he executed the deed, which, with the incumbrances at their nominal value of $58,000, made $70,000, but when plaintiff arrived in Kansas City he at once realized that his indebtedness amounted to a much larger sum, which plaintiff put at about $25,000, giving the items.    There was no demand for the property in the market, the value of which was fixed by several witnesses at $45,000. Owen had utterly failed to borrow any more money on it, and, when, after being unable to make any use of them, he gave the notes and deed of trust to his mother, he told her she might get something, she might get nothing, and she might get it all.

It is evident at the time plaintiff accepted the deed the deed of trust in controversy was not regarded by either party as being of much, if any, value.    Louis H. Owen was hopelessly insolvent at that time.    Indeed, it appears that he never had any property except boom-born equities in Kansas City real estate;   and the plaintiff was compelled to take this property or get nothing for his indebtedness.    There was an undisputed incumbrance on the property of $43,000, and another incumbrance of $5,000, the *bona fides* of which was not disputed; but, owing to the holder thereof having other security for it, Owen thought he could procure its release as far as this lot was concerned.    If this had to be paid, which was probable, the incumbrances amounted to $48,000 exclusive of some interest then accumulated.    Under such circumstances no wonder plaintiff hesitated about accepting the deed, and taking this whole record together we are satisfied he never would have accepted it if he had supposed that he

would have to pay the notes in dispute.   They, with the other incumbrances, made $58,000 besides some interest, which would have left him no possible margin for anything to gò on his own claim, and would have burdened him in taking care of such large debts.   No value of the land was fixed or agreed on.   It was clear, however, that there was no probability whatever that the plaintiff would realize all of his claim against Owen after paying even the undisputed incumbrance of $48,000.   All he hoped for was that the property might rise in value, by which there would be a margin out of which something might be made.   Plaintiff did not in the deed, or otherwise, assume to pay the notes in dispute, nor did he expect to have them to pay, no matter what Owen thought about it.   Hence, the principle above announced does not affect plaintiff's rights in this transaction.

Again, we think it well settled that where the incumbrance is not made a part of the consideration and not deducted from it, and where it is not assumed by the grantee, the recital in a deed that the conveyance is subject to an incumbrance, does not estop the grantee from showing that what purports to be an incumbrance is not one in fact because of its invalidity, or because it has been satisfied. *Purdy v. Coar*, 169 N. Y. 448; *Russell v. Kinney*, 1 Sandf. Ch. 34; *Hartley v. Tatham*, 10 Bosw. 273; *Briggs v. Seymour*, 17 Wis. 255; *Sewing Machine Co. v. Emerson*, 115 Mass. 554; *Thompson v. Morgan*, 6 Minn. 292; *Williams v. Thurlow*, 31 Me. 392; *Baldwin v. Tuttle*, 23 Iowa, 66; *Wood v. Broadley*, 76 Mo. 23; *Cummins v. Wire*, 6 N. J. Eq. 73; *Judson v. Dada*, 79 N. Y. 373; *Parker v. Jenks*, 36 N. J. Eq. 398; *Flanders v. Doyle*, 16 Ill. App. 508; *Bishop v. Felch*, 7 Mich. 371; *Martineau v. McCollum*, 4 Chand. (Wis.) 153.

It being indisputably proved that no price was fixed on the property, and that plaintiff did not in the

deed or otherwise assume to pay the notes in dispute, the controlling question in the case is, can the payment of these notes be enforced against the property by virtue of the deed of trust? We think not. We do not place our decision on the ground that Louis H. Owen agreed to have these notes surrendered and canceled, but on the ground that there was no consideration whatever to support them as against either Louis H. Owen or the plaintiff. It is urged that, while Louis H. Owen might resist the payment of these notes, the plaintiff has no such right. We do not concur in this proposition. Indeed, we think plaintiff's attitude towards these transactions entitles him to much more favorable consideration from a court of equity than Louis would have been entitled to had the contest come between him and his mother. When the deed to plaintiff was made, the property was incumbered by deeds of trust aggregating $48,000 prior to the one in dispute, which rendered the latter virtually worthless. Plaintiff, acting under the belief that he would not have to pay the notes in dispute, removed enough of the prior incumbrances to make these notes valuable, and it would operate as a fraud on him to compel him to pay them. He changed his condition by the payment of money he was not equitably or legally bound to pay, and thereby made that valuable which without such payment would have been worthless. Louis H. Owen stood by and aided plaintiff in removing the prior incumbrances, and then undertook to sell the property through his father, as trustee, to raise money to enable him to make his mother a present.

There is a concurrence of all the authorities that a note, given by a parent to a child, or *vice versa*, in consideration of love and affection alone, cannot be enforced between the original parties or those claiming under them with notice. Daniel on Negotiable Instru-

ments [4 Ed.] sec 179; Story on Promissory Notes [7 Ed.] sec. 184; Tiedeman on Commercial Paper, sec. 159; 2 Randolph on Commercial Paper, sec. 453; *Williams v. Forbes*, 114 Ill. 167; *Fink v. Cox, Ex'r*, 18 John. 145; *College v. Tuttle*, 71 Iowa, 596; *Carr v. Silloway*, 111 Mass. 24; *Appeal of College*, 111 Pa. St. 130; *Gerry v. Howe*, 130 Mass. 350; *Cloyes v. Cloyes*, 36 Hun, 145.

"A promissory note is but the promise to pay money in the future, and, if made and delivered purely as a gift, is without consideration, and cannot be enforced at law or equity, either against the maker, or against his estate after his death, except in the hands of a *bona fide* holder for value, without notice of the want of consideration. Such a note is but a promise to make a gift in the future, and the gift is not completed till the note is paid. It can be revoked any time before payment, and death will revoke it." 8 American & English Encyclopedia of Law, 1320.

If there was, therefore, no consideration for the note of $2,500 by Louis H. Owen to his mother, except love and affection only, or if the amount of money therein expressed was intended as a gift, she cannot enforce payment of it either against Louis or against plaintiff.

Let us inquire then what the consideration of the note was. We think it clear from the evidence, pleadings and briefs of counsel that there was no other consideration for it than the love and affection Louis H. Owen had for his mother. Mrs. Owen testified that the note was given "in consideration of money to pay for this house and to repair it and nothing else. The house was a present to me by my son Louis and the note was a part of the same transaction. * * * I never kept any account with him as to our transactions. We have neither of us made any charges against the other. * * * Louis was

indebted to me only as a child was to his parent.'' In the original brief of defendants' attorneys, it is stated that Louis H. Owen ''was under no strict legal obligation to buy this home for his mother, but he did it because he felt it to be his duty as a son.'' Hence, in the determination of this question, we must discard all of the evidence in regard to money Mrs. Owen furnished her son seven or eight years prior to the giving of the note as it clearly appears that the son was never under any legal obligation to repay it; and there never having existed any legal obligation to pay, there was no consideration for a subsequent promise to pay.

''And the rule may now be stated as follows: A moral obligation to pay money or to perform a duty is a good consideration to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law but for the interference of some rule of law.'' 1 Parsons on Contracts [7 Ed.] top p. 434.

''It is now generally held that to render a subsequent promise valid some act must have been done or service rendered on the faith of an express or implied request, and that when this element is wanting it will not be enough to show that the defendant was morally bound to remunerate the plaintiff, and ratified the obligation by an express promise.'' 3 American & English Encyclopedia of Law, p. 840, note 2.

The note of $2,500 has no consideration, therefore, to support it except Mrs. Owen's son's love and affection for her. His act was very commendable, but the law requires that a man shall be just before he is generous. The $500 he gave her to pay on the New York home she can keep, because it was his money, and the gift was perfected by delivery, but here there is an attempt to enforce a promise to make a gift, and

the gift, if made now, will not come from Louis H. Owen, but from another, and the courts will not permit this to be done.

III.   But it is again urged that the execution of the bond and mortgage by Mrs. Owen to secure $1,500, the balance of the purchase money of the property in New York, constituted a consideration, at least *pro tanto*, for the note of $2,500, and this brings us to the consideration of the contention of plaintiff, that the court erred in decreeing a lien on his property in favor of Mrs. Owen for $1,699.50.  Our conclusion is, on this point, that the court did err.

The property was conveyed to Mrs. Owen.  Her son paid $500 for her benefit, and she gave a mortgage to secure the balance of the purchase money for her own benefit.   We cannot perceive how the donation of $500 to his mother put the son under legal obligation to donate $1,500 more.   She was certainly in no worse condition after receiving the deed to the property with $500 of the purchase money paid than she was before, and she then had nothing to rely on except her son's promise to make her a present in the future, and she cannot, as we have seen, enforce such a promise.

IV.   The attempt on the part of the defendants to sell the property under a deed of trust for the payment of a debt having no consideration to support it, gives plaintiff a standing in a court of equity to have the sale enjoined on the ground that it would cast a cloud on his title.   *Ryan v. Gilliam*, 75 Mo. 132; *Parks v. Bank*, 97 Mo. 130.

The judgment will be reversed and the cause remanded with directions to the circuit court to enter a decree making the injunction perpetual without requiring plaintiff to pay anything.   All concur.

## ON REHEARING.

THOMAS, J.—A rehearing was granted defendants on plaintiff's appeal which involved that part of the decree of the lower court requiring plaintiff to pay for Mrs. Sophia C. Owen $1,699.50.

In the original opinion we held that there was no sufficient consideration to support *any part* of the note of $2,500, given by Louis H. Owen to his mother, but upon a re-examination of the evidence in connection with the question of law involved we are now satisfied we were wrong in this.

The evidence shows conclusively that Louis H. Owen bought the house and lot in Oswego, New York, on his own motion, but had it conveyed to his mother, who, at his instance, executed a bond in the sum of $3,000, double the amount of the purchase money remaining unpaid, and a mortgage on the premises to secure it. She thus assumed at his request a personal obligation to pay the debt of her son, the statute of New York authorizing her to so bind herself as to her separate property to the same extent as if she were a *feme sole*, no suit to charge her separate estate being necessary. This obligation thus assumed was a sufficient consideration to support the note to the extent of $1,500. Leake on Contracts, 628; 1 Chitty on Contracts, 64; *Steele v. Steele*, 23 Atl. Rep. (Md.) 959; *Crosbie v. McDoual*, 13 Ves. 148. And this is true whether the obligation is to pay for property bought for and conveyed to the obligee or not.

Plaintiff concedes the correctness of the general doctrine that, where a person contracts to purchase property in his own name, upon the promise of another to provide the money to pay for it, the consideration is sufficient to support the promise, but he denies its application to the facts of this case on two grounds:

*First*, that there is no evidence whatever that Louis H. Owen gave *the note* in consideration of the purchase of the property by his mother, and, *second*, that no consideration passed to Louis for the delivery to his mother of the two $5,000 notes as collateral security for the note of $2,500.

The first ground is not valid. Mrs. Owen assumed the $1,500 upon her son's promise to furnish the money to pay it. Indeed, he contracted the debt himself. He bought the property before he notified his mother he intended to buy it. To all intents and purposes, the debt was his own, and at his request his mother undertook to pay it. According to the authorities above cited, the son entered into an obligation to his mother, which she could enforce at law, and, being legally bound to pay the debt, the note given to secure it was based on a sufficient consideration. The fact that the property was conveyed to the mother, and was intended as a gift to her, does not affect the consideration of his promise to pay the purchase money. She incurred a legal liability on the representations and at the request of her son, and that is enough.

It is earnestly argued that she did not assume the obligation at the request of her son and in reliance on his promise. In this we do not concur. This is a stronger case in favor of the mother than any of the cases cited above, in all of which the parties, standing in the relation the mother does here, made the purchase themselves in their own names upon the promise of third persons to furnish the purchase money or a part of it. Here the son bought the property, paid $500 in cash and told his mother to give the bond and mortgage, and he would furnish her the money to liquidate the debt. There is no question that she would not have entered into the engagement, if it had not been for her son—indeed, it had not occurred to her to buy the prop-

erty. *He* created the debt, and *she*, at his request, assumed to pay it.

Nor do we think the second ground tenable. If plaintiff was an innocent purchaser without notice of Mrs. Owen's claim, the contention would be maintainable, but he is not.   He knew when he accepted the deed that Mrs. Owen held the two notes of $5,000 to secure the note of $2,500, and he stands in the shoes of Louis H. Owen.   His attitude towards this debt is precisely that of Louis H. Owen, and he can resist payment to the extent only that Louis H. Owen can.

That a pre-existing debt or obligation is a sufficient consideration for a mortgage *as between the parties*, there is no question.   1 Jones on Mortgages [4 Ed.] sec. 458; 15 American & English Encyclopedia of Law, pp. 757–8, and notes.   Louis H. Owen could not defend against the foreclosure of this mortgage against the $1,500 on the ground that no *new* consideration moved to him at the time he delivered the mortgage and notes to his mother, nor can plaintiff defend against it on that ground.   As to this point, however, plaintiff's predicament is precisely that of Sophia C. Owen, because the only consideration for the conveyance to him was a pre-existing debt.

As to the remaining $1,000 of the note of $2,500 we still adhere to the conclusion reached in the original opinion that it was without consideration, and its payment could not be enforced against Louis H. Owen, and, consequently, cannot be enforced against plaintiff, the latter having stepped into the former's shoes, and is entitled to be subrogated to all his rights.

The decree of the lower court is affirmed in all respects, and each party will be adjudged to pay one-half of the costs of these cross appeals.   All concur.