J. D. STICKLEY, Appellant, v. G. S. WIDLE, Defendant, WILLIAM GIBSON, Intervener and Appellee.

**Homesteads:** ABANDONMENT: ATTACHMENT.  Where one purchases a new homestead and takes possession of the same as such, the former homestead becomes subject to the lien of an attaching creditor levied prior to a completed sale or exchange thereof. Evidence considered and held insufficient to show a sale or exchange.

**Sale by Husband:** RATIFICATION BY WIFE: RIGHTS OF CREDITORS. An oral contract made by the husband alone for the sale of the homestead belonging to himself and wife is void, and a ratification by the wife subsequent to the levy of an attachment upon the property will not affect the creditor's rights under the attachment.

*Appeal from Jackson District Court.*—HON. A. J. HOUSE, Judge.

MONDAY, JANUARY 25, 1904.

THE plaintiff caused certain real estate to be attached which the intervener claimed to own. The case was tried in equity, and there was a decree for the intervener. The plaintiff appeals.—*Reversed.*

*Wynkoop & Fort* for appellant.

*W. C. Gregory* for appellee.

SHERWIN, J.—The property in dispute was occupied by the defendant, Widle, and his family as their homestead until the middle of July, 1900, when they moved therefrom to another property, which the defendant bought for use as a homestead, and which he and his family have since occupied as such. After the defendant removed from the property in controversy, and on the 19th day of November, 1900, the

plaintiff caused a writ of attachment to be levied thereon as the property of the defendant, Widle, but notice of such levy was not served upon Widle until the 30th of the month. On the 22d day of November, 1900, Widle and his wife executed and delivered to the intervener herein a quit-claim deed of the premises. The intervener alleged, attempted to prove and now claims that at about the time that Widle moved into the property which he now occupies he and Widle exchanged properties, and that he took the property in controversy in exchange for the property now occupied by Widle; that the contract of exchange was not in writing, but that he took immediate possession of the property, and was in possession thereof when it was levied upon. There never has been, in our judgment, an absolute sale or exchange of the property in controversy. When Widle bargained for the property which he now occupies, and which, by the way, was also an oral contract, it is doubtless true that he attempted to turn this property in toward the purchase price; but the intervener had never seen it, knew nothing about it or its value except as told by Widle, and did not take the trouble to investigate these matters, or to learn the condition of the title thereto. The property which he let Widle have was valued at about $1,100, and no value was fixed upon the property he was receiving, though it is admitted that it was not worth over $500, and was incumbered by a mortgage of $200.

But it is said that he was to take the property, sell it for what he could, or, if he could not sell it, he was to rent it, and, in either event, he was to apply the money received upon Widle's debt to him. If such a contract were in fact made, its effect would be to secure the intervener to the extent of the money he received from it, and nothing more. And we do not think anything further than this was contemplated by the parties. If this conclusion is right, it follows that there was an abandonment of this property as a homestead, for it is clear that Widle could not hold both places

as a homestead at the same time. It is argued, however, that, having sold or exchanged the old homestead, he was entitled to the proceeds thereof to apply on the purchase price of the new. This might be true under some conditions, but it is not true here, for he neither sold nor exchanged it, but was holding it for the purpose of sale, and, having then selected a new homestead, its character as such was lost.

Furthermore, even if it were conceded that there had been a sale or exchange in July, as claimed, it was for the sale of the homestead, and was an oral contract between the defendant and intervener alone, and was absolutely void. *Clay v. Richardson,* 59 Iowa, 483. There is no doubt but that the wife might afterwards ratify such a sale, but she did not do it unless it be said that it was done on the 22d day of November, when she joined in the quitclaim deed to the intervener. At that time, however, rights of third parties had intervened, and her ratification then would not be permitted to prejudice such rights. *Cook v. Tullis,* 85 U. S. 332 (21 L. Ed. 933) ; 1 Am. & Eng. Enc. of Law, 1215.

On the 19th day of November the attachment was levied by entry in the incumbrance book. No one was then in possession of the property, and by the return of the sheriff it is shown that he was unable to find the defendant in the county until the 28th day of November, and that on the 30th day of the month he served notice of the levy upon him. This was served with the diligence required under the holding in *Schoonover v. Osborne Bros.,* 111 Iowa, 140, and we think the levy valid.

The judgment should have been for the plaintiff, and the case is REVERSED.