C. R. NICHOLSON, Appellee, v. E. F. ANEY, Appellant.

**Purchase money mortgage:** SUBROGATION. A chattel mortgage
1   given to secure money borrowed to pay a prior mortgage securing the purchase price of property, and to pay for additional material, is not a purchase money mortgage; and upon payment of the prior mortgage the subsequent mortgagee is not entitled to be subrogated to the rights of the prior mortgagee.

**Priority of liens.** The holder of a chattel mortgage is not estopped
2   from asserting the priority of his lien over that of a former invalid mortgage, by a recital that it was subject to any rights acquired under the first mortgage.

**Priority of liens.** Where two mortgagees accepted and recorded
3   invalid mortgages covering personal property because not signed by the wife, the one first procuring and recording a valid mortgage will acquire the first lien.

**Reformation of instruments.** Where the evidence is conflicting concerning the intention of the parties in inserting in a mortgage
4   a provision that it should be subject to any rights acquired under a prior mortgage which proved to be invalid, equity will not reform it so as to make it an inferior lien.

**Ratification of void mortgage.** Conceding that a wife may ratify
5   a mortgage by the husband, covering exempt personal property, by subsequently signing the same, this cannot be done to the prejudice of intervening liens upon the property.

*Appeal from Pottawattamie District Court.*— HON. W. R. GREEN, Judge.

MONDAY, APRIL 12, 1905.

ORIGINALLY this was an action for the conversion of certain personal property upon which plaintiff held a chattel mortgage. The defendant tendered such issues as took the case to the equity side of the calendar, where it was tried by the court, resulting in a judgment for the plaintiff in the sum of $213, and the dismissal of defendant's cross-petition. Defendant appeals.—*Affirmed.*

*Organ & Pusey,* for appellant.

*L. G. Scott,* for appellee.

DEEMER, J.—Plaintiff's action is bottomed upon a chattel mortgage, under date of March 22, 1902, executed by J. G. Todd and Rosa Todd, his wife, to Cox & Campbell, covering certain printing presses, type, galleys, imposing stones, type cases, etc., and all other printing materials, stock, and tools " that we now own or may hereafter acquire during the life of the mortgage." " Also the subscription list and good will of the Underwood Union." This mortgage was recorded March 22, 1902, and thereafter Cox & Campbell assigned the same, and the notes which it was given to secure, to plaintiff, Nicholson. Prior to that time, and on or about February 3, 1902, Todd alone had executed a mortgage to Cox & Campbell covering practically the same property, to secure the same debt, and the first mortgage of which we have spoken was taken in order to secure the signature of Todd's wife thereto. This mortgage provided that it should be " subject to any rights E. F. Aney may have acquired under a mortgage dated January 4th, 1902, or thereabouts." The first of these mortgages, in point of time, was recorded February 5, 1902. On the 4th day of February, 1902, Todd alone executed to defendant, Aney, a chattel mortgage upon practically the same property covered by the Cox & Camp-

bell mortgages, which said mortgage was recorded February 4, 1902. Thereafter, under date of February 4, 1902, Todd (his wife joining with him) made a chattel mortgage to Aney, covering practically the same property as the prior one, in which it was stated that it was " to confirm and ratify the previous mortgage made by Todd alone to Aney of date February 4th, 1902, in which Rosa Todd the wife, through inadvertence and for lack of knowledge of the statute did not then execute with her husband." These mortgages were, of course, for the same debt, but the last was not acknowledged until November 10, 1903, which is presumptively the date of its execution. These last-named mortgages were made to secure twenty promissory notes, of $20 each, dated February 4, 1902. It appears that prior to this time, and on December 26, 1901, Todd had made a mortgage on practically the same property as that covered by these later mortgages — except the subscription list and after-acquired property — to one Theodore Kharas, to secure thirty-two promissory notes, each for the sum of $10, save the last, which was for $15, dated December 26, 1901, and payable to the order of Kharas. These notes were each and all indorsed in blank by Kharas, and under date of January 27, 1902, the mortgage was assigned by Kharas to one Saunders. Defendant Aney took possession of the property covered by these mortgages, added some material thereto, and afterwards sold the same by bill of sale to J. A. and Ida Bowlin. Thereupon, and on the 9th day of April, 1902, plaintiff commenced this action to recover the property or its value.

Defendant claims, among other things, that his mortgages from Todd are prior and superior to those held by the plaintiff; that his mortgages were given for the purchase price of the property covered thereby; that plaintiff's mortgage — especially the last one in point of time — was by its terms made subject to those held by him (the defendant); and he asked the foreclosure of his mortgages in equity. He also averred that when Todd executed the mortgages to Cox

& Campbell it was the intention and purpose of all the parties thereto that these mortgages should be subject to the ones held by the defendant, and be in fact second mortgages, and he asked reformation of the instruments to make them correspond to this intent and purpose. Plaintiff denies that defendant's mortgages, or either of them, were for the purchase money of the property; avers that his second mortgage in point of time was made to cure a defect in the first, due to the failure of Todd's wife to sign the same; alleges that it was agreed and understood by the parties that his (plaintiff's) mortgage should be first in point of time; charges that defendant's first mortgage is void because Todd's wife did not join therein; alleges that his mortgages were for purchase money, and are a first lien upon the property in controversy, and were so intended by the parties. He also pleaded that defendant Todd had fraudulently connived and confederated to cheat and wrong the plaintiff, and defeat him of his prior lien upon the property.

The testimony shows that in December, 1901, Todd purchased of one Kharas a printing plant, for the purpose of publishing a newspaper at Underwood, Iowa, to be known as the " Underwood Union." For the purchase price thereof, he gave a mortgage on the property to Kharas to secure the 32 notes, aggregating $325. This mortgage was not recorded, and Kharas on January 27, 1902, sold and assigned the same to one Saunders, as heretofore stated. Todd was unable to meet his payments to Kharas or his assignee and he (Todd) induced the defendant Aney to loan him the money with which to take up the Kharas mortgage. Aney loaned him (Todd) $400, and took the mortgage signed by Todd alone to secure the twenty notes of $20 each, to which we have referred. With the money so secured, Todd paid Saunders, the holder of the notes and mortgage by assignment from Kharas, the amount necessary to take them up, and, after paying and canceling the notes, delivered them to Aney. Cox & Campbell were at the same time running a

paper at Underwood known as the " Times," and, concluding that there was not room for the two papers in so small a town, they sold their subscription list, good ·will, and some type to Todd for the agreed price of $250, $25 of which was paid in cash, and the remainder was represented by twenty-two notes, which were secured by the mortgages on which the plaintiff as an assignee now relies. The first of these mortgages covered all the printing material then owned or that was thereafter acquired by Todd, and " also the business right of publishing a newspaper in Underwood." This mortgage, as we have already seen, was signed by Todd alone. The second mortgage, under date of March 22d, covered all printing material, etc., then or thereafter to be acquired, and the subscription list and good will of the Union. The $25 in cash paid to Cox & Campbell was furnished by the defendant Aney. Cox & Campbell soon discovered that there was some question about the validity of their first mortgage, because Todd's wife had not signed it, and they also learned that Aney's first mortgage was not good, for the same reason; and they thereupon prepared their second mortgage, and presented it to Todd for him and his wife to sign. Todd discovered that it was not made subject to the Aney mortgage, and he (Todd) then insisted that a clause be inserted therein, because of his fear of the consequences of giving what were apparently two first mortgages upon the same property; and it was then agreed that Cox & Campbell should write therein the clause as to the Aney mortgage which we have heretofore quoted. Long thereafter, and after this suit was commenced, Aney took his second or ratification mortgage, of which we have already made mention. The newspaper business did not prove profitable, and Todd turned the plant over to Aney, who took possession and continued to conduct the business until he sold it to Bowlin, during the pendency of these proceedings. While defendant had possession of the property he traded two of the old presses for some new ones, and invested therein, in addition to the old

presses, something more than $250. He also added other property which cost him something like $35. He sold the entire plant, with these things added, to Bowlin, for $400; agreeing to protect him (Bowlin) therein, and without any intention of releasing his mortgages as against any other lienholder or creditor.

The weight of the evidence shows that while the subscription list sold by Cox & Campbell was estimated as being worth $250, it was not in fact worth to exceed $200. Aney's first mortgage, under date of February 4th,
1. PURCHASE MONEY MORT-GAGE: subro-gation.
covered this subscription list, as also did the second one, given to Cox & Campbell. All the property covered by these various mortgages was exempt from execution, and, under present statutes, none of the mortgages were valid, save those signed by both Todd and his wife, unless given upon property sold, to secure the purchase price thereof. Code, section 2906. Defendant Aney contends, however, that both his mortgages were given upon property sold, to secure the purchase price thereof. But this is manifestly unsound. His mortgages were not to secure the purchase price of any property sold by him, but to secure him for money borrowed by Todd, which he (Todd) was to, and did, use in taking up the Kharas mortgage, and to procure material with which to run the plant after he acquired it. Aney did not sell the property, or any part of it, to Todd, nor were his mortgages given to secure the purchase price. Jones on Mortgages, volume 1, section 465. The Kharas mortgage was fully paid and extinguished by Todd from the money borrowed of Aney. Hence Aney is not entitled to be subrogated to the mortgagee's rights under that mortgage.

Aney next contends that owing to the stipulation contained in the second Cox & Campbell mortgage, to the effect that it was " subject to any rights E. F. Aney
2. PRIORITY OF LIENS.
may have acquired under his mortgage," etc., plaintiff is estopped from asserting his second mortgage as

against it. The difficulty with this position is that this Aney mortgage did not in any manner enter into the consideration for the Cox & Campbell mortgage, and Cox & Campbell did not agree that it should be superior to theirs. They simply took their mortgage subject to any rights Aney may have acquired under his first mortgage. He had acquired none, because that mortgage was invalid, for the reasons already stated; hence there was no estoppel. *Brooks v. Owens,* 112 Mo. 251 (19 S. W. 723); *Waughtal v. Kane,* 108 Iowa, 268; *Co-operative Co. v. Kent,* 108 Iowa, 146. But defendant contends that, even if this be true, the second Cox & Campbell mortgage should be so reformed as to make it absolutely subject to his (Aney's) mortgage. The testimony is not sufficient to justify us in so reforming this instrument. There is a square conflict in the testimony regarding what was said between the parties when the mortgage was executed, and it appears from Todd's own testimony that his purpose in having the clause written in it was not so much to give Aney's mortgage priority as to save himself from a supposed liability for giving, as he said, two first mortgages on the same property. Cox & Campbell, on account of their knowledge of the defects in Aney's mortgage, were not willing to make theirs absolutely subject thereto; hence they wrote in the clause as it now appears advisedly. As they were not prepared to admit that Aney's mortgage was superior to their own, neither they nor their assignee is estopped by the recital therein, nor should the mortgage be reformed. Bigelow on Estoppel, page 369, chapter 10. The quantum of proof essential to justify the reformation of a written instrument is well understood, and it is sufficient to say that the defendant has not furnished it here.

4. REFORMATION OF INSTRUMENTS.

Further, it is argued that, as Todd's wife ratified and confirmed the Aney mortgage, this gave him (Aney) a prior right to the mortgaged property. Conceding, arguendo, that a mortgage of exempt personal property, signed by the hus-

band alone, may afterward be ratified and confirmed by the wife, and that this ratification will ordinarily relate back to the time of the making of the original contract, yet this rule will not be so applied as to prejudice the rights of intervening creditors, lienholders, or purchasers. When plaintiff's assignors took their second mortgage, which was signed by Todd and his wife, the mortgage to Aney had not been ratified by Todd's wife; nor was this done until long after the commencement of this litigation. At that time Aney's mortgage was invalid, and Cox & Campbell only agreed to take their mortgage subject to any rights that Aney then had under his first mortgage, signed by Todd alone. The Cox & Campbell second mortgage was founded on a good consideration, and this suit was commenced before any attempt at ratification; hence the ratification of the Aney mortgage by Todd's wife could not relate back so as to give him (Aney) any rights over Cox & Campbell or their assignee. Moreover, the first Cox & Campbell mortgage was good, without the signature of Mrs. Todd, as to all the property sold by them to Todd; and this, of course, has priority over any claim made by the defendant.

5. RATIFICATION OF VOID MORTGAGE.

Something is said by appellant, Aney, with reference to his priority, because of the time the various instruments were filed for record. But there is nothing in this contention. True, Aney's first mortgage was first recorded, but it was not first in point of time; nor was it, in its then condition, of any validity. Record thereof gave no notice to any one. Cox & Campbell's first mortgage was good in part, because it covered the purchase price of some of the property sold by them to Todd. Their second mortgage was valid *in toto*, and this was recorded long before Aney took his second or ratification mortgage. The rights of Cox & Campbell and of their assignee were fixed at least when this suit was commenced, and they could not be deprived thereof by a subsequent ratification. These are

3. PRIORITY OF LIENS.

fundamental doctrines. The entire case turns primarily upon the effect to be given the clause in Cox & Campbell's second mortgage making it subject to any rights Aney may have acquired under his first mortgage. As we have seen, this did not make it subject to the Aney mortgage, if it should turn out that that mortgage was in fact invalid. Therefore plaintiff should recover, unless defendant is entitled to a reformation of the second Cox & Campbell mortgage, and this relief he has not shown himself entitled to. Assuming, for the purposes of the case, that neither of the mortgages in which Todd's wife did not join is of any validity, the record shows that plaintiff's assignors first received and recorded a valid mortgage upon the property. This being true, plaintiff is entitled to priority, unless it be for some agreement to the contrary, and this is not shown.

Defendant has disposed of the property, and, of course, converted the same. Plaintiff was allowed $213 on account of this conversion — probably on the theory that, in any event, he was entitled to the value of the subscription list, on which he admittedly had a prior lien — which amount is less than the mortgage indebtedness; but, as he does not complain, we have no occasion to consider the sufficiency of the allowance.

The judgment seems to be correct, and it is *affirmed*.