First National Bank of Emmetsburg, Iowa, Appellee, v.
   C. E. Gunhus, et al., Defendants.. The Farmers and
   . Merchants Savings Bank of Rake, Iowa, Defendant
   .and Appellant.

**Pledges:** CHARACTER OF DEPOSIT: EVIDENCE. On an issue as to
1  whether a note was delivered to a bank as collateral security,
   or to be sold and the proceeds applied on the debt of the party
   delivering the note, the evidence is held to show that it was
   deposited as collateral.

**Discharge of pledge.** The mere renewal of a note does not have
2  the effect to discharge securities deposited as collateral.

**Pledge of bank official:** DISCHARGE BY SUBSTITUTION: EVIDENCE,
3  The obligation of a cashier is to pay his own debt to the bank
   in cash the same as other persons; and he cannot discharge
   the same by accepting for the bank the note of a third person
   due him and thus invest the bank with ownership of the note
   unless so authorized.  Evidence held insufficient to show own-
   ership of the substituted note in the bank.

**Same:** RATIFICATION. The unauthorized act of a bank cashier in
4  substituting for his own debt to the bank the note of a third
   person due him may be ratified, but such ratification will not
   operate retroactively so as to cut off any intervening right.

*Appeal from Palo Alto District Court.*— Hon. W. B. Quar-
                                  ton, Judge.

THURSDAY, FEBRUARY 14, 1907.

Action in equity to recover upon promissory notes exe-
cuted by the defendant Gunhus to the plaintiff bank, and to
foreclose in respect of certain collateral securities.   The de-
fendant bank claimed to be the owner of one of the collateral
notes, being a note for $2,500 executed by one Jacobs and
secured by mortgage on certain lands situated in the State of
Minnesota.   There was a decree in favor of plaintiff bank as
against both defendants.   The defendant bank alone appeals.
— *Affirmed.*

*J. W. E. Markley, D. W. Telford,* and *Kelly & Kelly,* for appellant.

*Soper, Morse & Soper,* and *E. A. Morling,* for appellee.

BISHOP, J.— The controversy on this appeal involves only the question of the rights of the parties in and to the Jacobs note and mortgage. On the one hand, it is the contention of the plaintiff bank that such note and mortgage was deposited with it by Gunhus, the owner thereof, as collateral to his indebtedness. On the other hand, it is the contention of the defendant bank that it is the sole owner of the note and mortgage, and is entitled to the possession thereof; that said note with the mortgage was placed in the hands of A. H. Keller, cashier of plaintiff bank, as agent by defendant bank acting through Gunhus, its cashier, to be sold for and on its account. The evidence showed a state of facts substantially as follows: Gunhus was cashier of the defendant bank and was its managing officer. He was largely indebted in a personal way to the plaintiff bank, and as security to such indebtedness he had given a deed to a tract of land in Pope county, Minn., owned by him. This deed was never recorded. Subsequently thereto he executed to the defendant bank a mortgage on said lands to secure a note of $2,500, and it appears that minute of such note and mortgage was entered by him on the bills receivable book of the bank, and that $2,500 in cash was drawn out by him. This mortgage was never recorded. A short time thereafter Gunhus sold the Minnesota land to Jacobs, and, in part payment, took the note and mortgage in controversy in this action. Otherwise than as above stated, the defendant bank had no interest in said land, but it appears that Gunhus took the note and mortgage in the name of the bank. His reason for so doing is not explained in the evidence. Upon receiving the Jacobs note and mortgage, Gunhus handed them to his assistant in the bank and told him to put them in the case with the bills

receivable of the bank, and to take out his (Gunhus') note and mortgage, and this was done. No entry of the transaction was made on the books of the bank, either as to payment of the Gunhus note or the acquisition of the Jacobs note. Almost immediately thereafter — on the same day it would appear — the Jacobs note and mortgage was taken out by Gunhus and given over either to plaintiff bank or to Keller, which is a point in dispute. In respect of the other officers of the defendant bank, it is admitted that they had no knowledge of these matters until long afterwards. Nor did any of the officers of the plaintiff bank have knowledge respecting the Gunhus mortgage given to the defendant bank. At the time of the delivery of the Jacobs note to the plaintiff bank or to Keller, Gunhus indorsed the same in blank in the name of the defendant bank, by himself as cashier.

I. Of course, if the Jacobs note was given over to Keller, or to the plaintiff bank, as agent, and simply for the purpose of being sold and the proceeds accounted for, it 1. Pledges: character of deposit: evidence. might consistently be urged that the decree should have been in favor of the defendant bank. Properly enough, therefore, this fact issue may first be disposed of. The evidence relied upon by appellant to support its contention is that of Gunhus alone. He says in direct language that he sent the note down to Keller to be sold, and not to be held by the plaintiff bank as collateral security, and that nothing was said on the latter subject. On the other hand, Keller testified that the note was sent to the plaintiff bank to be held by it as collateral security until such time as it could be sold, and that, when sold, the proceeds were to be applied on the indebtedness of Gunhus to the bank. He also testified that upon receipt of the note he returned to Gunhus the deed formerly held by the bank. The letter of transmittal written by Gunhus is addressed to Keller, but beyond that it throws no light on the question at issue. The testimony of Keller finds corroboration, however, in these facts: Some time after the note

was sent to Keller, Gunhus renewed a note obligation held by the plaintiff bank, and in the renewal note — known in the record as Exhibit E — it was recited that the Jacobs mortgage had been deposited as collateral thereto. Of this Gunhus makes no explanation, save that he does not remember about it. Later on Gunhus wrote to Keller, saying: "I would like to get back the bank stock you are holding, also the Pope county mortgage, and in place of that I shall give you a warranty deed of a farm I have in Swift county, Minn. I figure my equity in this farm $3,000. You will then be holding $12,000 in real estate as security." And in a few days, he wrote again, saying: "You may keep the bank stock, but would like to get back the mortgage and give you deed on land, as I must raise some money." No explanation of these letters was attempted to be made by Gunhus. It also appears that the interest on the Jacobs note was collected by the plaintiff bank, and there is no suggestion that the amount of such interest collection was paid over to Gunhus. There is, then, the circumstance of the deed to the land formerly held by the plaintiff bank, and of the fact as testified to by Keller that the same was returned to Gunhus. This comprises the evidence on the subject, and, in view thereof, no other conclusion is possible in reason than that the note was deposited as collateral.

II. It is insisted by appellant, however, that, conceding the Jacobs note to have been deposited as collateral, the evidence in the record shows that the obligation of Gunhus which was secured thereby had been fully paid

2. DISCHARGE OF PLEDGE. long prior to the commencement of this action. We do not so understand the evidence. It appears from the testimony of Keller that the deposit was as recurity primarily to a note of $2,000, and, secondarily, to an indebtedness arising out of a sale to Gunhus of some bank stock. The $2,000 note was repeatedly renewed, and finally appears as Exhibit E, one of the notes sued on as against Gunhus in this action. Moreover, the form of the note — said

Exhibit E — is that the collateral shall be held as security for the payment of all other debts or obligations due from Gunhus to the bank.  That the mere renewal of an obligation to pay money does not have the effect to release or discharge securities deposited as collateral thereto is too well settled to require the citation of authoriies.

III.  This brings us to the question whether under the circumstances of the case the defendant bank acquired any right in the Jacobs note which should prevail against the plaintiff bank.  As we have seen, Gunhus was the sole owner of the land, and the Jacobs note, when taken, was his in full right.  And the mere fact that such a note was taken in the name of the bank could not have operation to clothe the bank with any beneficial interest therein.  Its right, if any it had, must have arisen out of what was subsequently done by Gunhus upon receipt of the note, as shown by the evidence, and already stated by us foregoing.  As it seems to us, the question primarily presenting itself assumes this form:  Could Gunhus, debtor, pay his own obligation to the bank through the acceptance by Gunhus, cashier, of the Jacobs note, and in such manner invest the bank with the ownership of that note?  And, if this question should be answered in the affirmative, there is the further question arising from the evidence, whether he did, in fact, pay his own obligation by accepting the Jacobs note for the bank, and so that such note became the property of the bank.  We think the primary question as stated above must be answered in the negative. As one indebted to the defendant bank, Gunhus occupied precisely the same attitude as any other debtor.  It was for him to pay his obligation in cash, and without the consent and approval of the governing body of the bank he could not otherwise cancel, satisfy, or change the same.  Most assuredly, he could not act for himself as debtor and for the bank as its managing agent, and in such double capacity agree that another debtor to the bank should be substituted in place of

*Margin note:* 3. Pledge of bank official: discharge by substitution: evidence.

himself. And this is true in accordance with the general rule that, without express consent, a man cannot in one and the same transaction act for himself and as the agent of another; there being a conflict in interest. In such a case the essential element of mutuality is wholly wanting. From this it follows that the act of Gunhus in taking out his own note and substituting in place thereof the Jacobs note had no force to change the relationship between himself and the bank. Such a change could be legally effected only through the medium of the board of directors, or some duly authorized officer. The following, among other, authorities that might be cited, are in point: *Bank v. Gifford,* 47 Iowa, 575; *Northwestern, etc., Co. v. Lough,* 13 N. D. 601 (102 N. W. 160); *Bank v. Foote,* 12 Utah, 157 (42 Pac. 205); *Ellis v. Bank,* 22 R. I. 565 (48 Atl. 936); 5 Cyc. 466.

Of course, the bank might ratify when the act of Gunhus became known, but, as the transaction was of no force until ratified, Gunhus was free in the meantime to 4. Same: make other disposition of the note. This ratification. must be so, because, until ratification, the bank in legal contemplation still held the obligation of Gunhus, and it had not become the owner of the Jacobs note. But a ratification cannot operate retroactively so as to effect or cut off intervening rights. *McHose v. Dutton,* 55 Iowa, 729; *Stickley v. Widle,* 122 Iowa, 400; *Nicholson v. Aney,* 127 Iowa, 278; *Murray v. Beal,* 23 Utah, 548 (65 Pac. 731); *Cook v. Tullis,* 18 Wall. (U. S.) 332 (21 L. Ed. 933.)

Something is said in argument about the assistant of Gunhus having acted in the transaction for the bank, and hence that the exchange of securities should be sustained. This cannot be; for, according to the evidence, the assistant did only what he was commanded to do by Gunhus. He did not assume to act independently, and, if the evidence were otherwise, there is no showing that he was possessed of any authority.

But, if it could be said in reason that the mere act of

Gunhus in placing the Jacobs note in the bills receivable case of the bank, and in taking out of such case his own obligation, could be given operation in any event to invest the bank with ownership of the note and extinguish his own obligation, it would be necessary to the validity of the act that it was thus intended. And this would be true on commonest principles. Gunhus as debtor must have intended to pay his own debt, and Gunhus as cashier must have intended to purchase the Jacobs note. It is not possible to find any such intention in the facts of the case as they are presented. It does not appear what was done with the Gunhus note, but the mortgage executed by him remained in the bank, and, as we have seen, no entry was made on the books of the payment of such note. And the Jacobs note was not entered on the books at all. It was no sooner put in with the bills receivable than it was taken out and sent to the plaintiff bank to take the place of the deed to the land — which land Gunhus had been able to dispose of in the absence of any record of such deed. Just what in truth was in the mind of Gunhus cannot be told, but it would seem certain that he did not intend to invest the defendant bank with ownership.

Something is said in argument about the good faith of the plaintiff bank, acting through Keller. It is said that Keller was president of the defendant bank, and was chargeable with notice of what was done by Gunhus. It appears that Keller had been a stockholder in the defendant bank, and had been its president. But he had long since sold his stock, and, although it does not appear that his successor as president had been elected, he had ceased to have any active connection with the bank. In the instant transaction he acted solely in the interests of the plaintiff bank, and this without knowledge of any interest on the part of the defendant bank. The mere fact that the note was taken in the name of the defendant bank would not of itself be sufficient, under the circumstances shown, to charge him with notice of interest. He knew of the ownership of Gunhus in the land, and of

the security deed held by his bank. Gunhus turned over the paper as his own, and Keller might well have believed that the use of the name of the defendant bank was mere matter of form.

We conclude that there was no error in the judgment, and it is *affirmed*.