## WALLER v. DAVIS ET AL.

1. **Partnership**: DISSOLUTION: PROMISSORY NOTE: EVIDENCE. Where an action was brought against the members of a firm on a note purporting to be executed by the firm, and for answer a general denial was pleaded, *held* that it was error to exclude evidence offered by defendant to show that, prior to the execution of the note, one of the members of the firm had conveyed his interest in the firm property to his copartners; for, while such conveyance could not be held to operate *ipso facto* a dissolution of the firm, it tended to show a dissolution, and, hence was not immaterial, especially if it should also be made to appear that plaintiff had knowledge of the fact

2. ———: WITHDRAWING OF PARTNER: NEW FIRM UNDER OLD NAME: LIABILITY FOR OLD DEBT. Where articles of copartnership contemplated that a partner might withdraw after six months, and that the remaining partners should pay him for his interest and continue the business, *held* that the withdrawal of one partner dissolved the old partnership, and that the remaining partners constituted a new firm, and that the new firm, though acting under the same name as the old one, could not be bound by a promissory note executed by one of its members for a debt of the old firm, unless upon the dissolution of the old firm, the new one assumed and became primarily liable for the debts of the old.

*Appeal from Dubuque Circuit Court.*

FRIDAY, JUNE 16.

ACTION upon a promissory note purporting to be executed to the plaintiff by Atherton, Davis & Co. The plaintiff avers in his petition that the defendants, A. S. Davis, M. Kingman and J. H. Hulbert, and one Atherton, were at the time of the execution of the note copartners in business under the firm name of Atherton, Davis & Co.; and that as such partners they executed to the plaintiff the note in suit. Notice was served on Hulbert alone. For answer he pleaded a general denial. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant, Hulbert, appeals.

*S. P. Adams*, for appellant.

*Hurd & Daniels*, for appellee.

ADAMS, J.—The undisputed facts are that the defendants and Atherton entered into a copartnership under the name of Atherton, Davis & Co., by written articles, on the 17th day of May, 1871. While the copartnership continued they became indebted to the plaintiff for the amount for which the note was given. The note was executed on the 1st day of March, 1872, by Atherton, by affixing thereto the firm name. Before that time, however, Hulbert had ceased to take an active part in the business of the firm, and he claims that he had withdrawn from the firm, and had ceased to be a member of the firm, and was not a member of any firm doing business under that name. He also claims that Kingman had withdrawn from the firm, and had ceased to be a member, and that by reason thereof, if for no other reason, the firm had become dissolved, as the plaintiff at the time of the execution of the note well knew.

I.   The first question arises upon the exclusion of evidence offered by Hulbert. The evidence offered and excluded was

1. PARTNER-
SHIP : disso-
lution:
promissory
note : evi-
dence.

that Kingman, in January, 1872, sold and conveyed his interest in the firm property to his copartners Atherton and Davis. Hulbert insists that such sale and conveyance, if made, worked a dissolution of the partnership, from which it follows that the note executed subsequently by Atherton in the firm name was not the note of the firm.

We ought, perhaps, to say in passing that it is not claimed by the appellee, and it could not be properly claimed, that where a partnership is dissolved one of the members can ordinarily bind the others by executing a note in the firm name, though given for a firm debt.

The question presented is as to whether the sale and conveyance by Kingman, if made, was a material circumstance; and if so, whether under the pleadings it was competent for Hulbert to show it.

In 1 Parsons on Con., 197, the author says: "Any assignment of a copartner's interest in the partnership funds operates

*ipso facto* a dissolution; this would certainly be true of the assignment of the whole of a copartner's interest, and perhaps of the assignment of any portion of his interest which required a closing of the partnership business and accounts to determine the value of the portion assigned." He cites Horton's Appeal, 13 Penn. St., 67; *Parkhurst v. Kinsman,* 1 Blatchford, 488; *Marquand v. N. Y. Manufacturing Co.,* 17 Johns 525; *Whitton v. Smith,* 1 Freeman Ch. (Miss.), 231.

But it is difficult to say that an assignment of a copartner's interest would in any case necessarily require a closing of the partnership business; and it appears to us that it could not be held to operate *ipso facto* a dissolution. The learned author from whose text we have quoted, seems himself to have reached the conclusion that it does not. In a note in the sixth edition of his work he says that the true principle seems to be stated in *Taft v. Buffum,* 14 Pick., 322. In that case it was held that an assignment of a copartner's interest does not operate *ipso facto* a dissolution, and is only evidence tending to show a dissolution.

If an assignment were made under such circumstances as to require a disposition of the partnership assets, and payment of the partnership debts in order to determine the value of the interest assigned, it would, we think, ordinarily, in the absence of any other evidence, be difficult to resist the conviction that the understanding was, at least on the part of the assignor, that his connection with the firm was terminated. Such assignment would ordinarily interrupt the partnership business. But we can easily suppose a case where no interruption would necessarily be caused. Suppose a member of a law firm, which owed no debts and whose assets consisted solely of property of some kind which it had taken for fees, should assign his interest in the assets, such assignment it would seem, would not of itself, cause any interruption; and if the business should be continued as before, it would not be necessary to suppose a dissolution of the old

firm, and the formation of a new one composed of the same persons. And even in a case where the partnership assets and liabilities are extensive and complicated and involved in more or less uncertainty, so that an assignment by a copartner of his interest in the assets would require the closing up and settlement of the prior partnership business, it would be competent to show if such was the fact, that it was not the intention of the copartners to dissolve the partnership. Nor would it be necessary to suppose, if they should continue in business without such intention, that the partnership was dissolved and a new one formed.

In the case at bar the alleged assignment was made by a partner to two of his copartners, and there was evidence tending to show that the assignor continued to interest himself in the business to some extent, and did not execute any paper showing a formal dissolution until some weeks afterwards.

We do not think, therefore, that the assignment necessarily showed a dissolution. But it was not necessary that it should to entitle Hulbert to introduce the evidence. If the assignment was only evidence tending to show a dissolution, it was not immaterial.

We proceed next to consider whether the pleadings were such as to justify its exclusion; and we have to say that we think that they were not. We have already shown that the allegation of the petition was, that the defendant and one Atherton were copartners, and as such executed to the plaintiff the note in suit. This the defendant Hulbert denied. It seems to us that the evidence was admissible under the issue thus made. The plaintiff proved the existence of the firm prior to the execution of the note. The presumption of its continuance was sufficient to make a *prima facie* case for the plaintiff so far as this point is concerned. But the presumption of the continuance of the firm was liable to be rebutted by evidence on the part of Hulbert of its dissolution. This he was entitled to prove by showing any fact or circum-

stance which had that tendency. It was not necessary for him to plead his evidence to entitle him to introduce it.

But it is said that the fact of dissolution by the retirement of Kingman, if such was the fact, could not affect the plaintiff, who had done business with the firm and was an existing creditor, unless he had knowledge of the dissolution; and it is said that Hulbert when offering the evidence of Kingman's assignment did not offer to prove also that the plaintiff had knowledge of it.

The evidence is not objected to upon that ground, and it does not appear to have been excluded upon that ground. Besides it appears that Hulbert at another time did offer to prove by the plaintiff himself that he had knowledge of the assignment.

Now, while as we have held, the sale, if made, did not necessarily show dissolution, and, as a consequence, knowledge of the sale would not strictly be knowledge of a dissolution, yet any fact tending to show dissolution must be regarded as admissible, if the plaintiff had knowledge of the fact.

II. It is insisted, however, that the sale at most would only show that Kingman retired, and while ordinarily the retirement of a partner works a dissolution it could not have that effect in this case, because the articles of co-partnership contemplated the possible retirement of one or more partners without a dissolution. It was provided in the articles that a partner might withdraw at the end of six months, and that the remaining partner should pay him for his interest.

*2. —— : withdrawing of partner: new firm under old name: liability for old debt.*

It is not to be denied, we think, that the articles contemplated a continuance of the business, and that too by a partnership composed of the persons who should not withdraw. But it appears to us that such partnership could not properly be considered as identical with the partnership theretofore existing. If there was a partnership after Kingman's withdrawal it was not constituted as was the partnership theretofore existing.

Whether if the remaining partners continued in business as a new partnership under the old name, a member thereof could bind the firm by a promissory note given for an old debt, would probably depend upon circumstances. If Kingman had withdrawn at the end of six months, and had transferred to the remaining partners his interest, and they had settled with him for the same upon the basis of its value, estimated by deducting from the estimated value of the assets the liabilities of the firm, there would be much ground for contending that as between Kingman and the remaining partners the latter assumed the liabilities and became primarily liable; and that if a new firm was formed by such partners either one of them could bind the firm by giving a promissory note for the liabilities, or any one of them. But in the absence of such assumption of primary liability it seems to have been held that the authority to give a firm note does not exist. *Spaunhoist v. Link*, 46 Mo., 197.

The evidence offered for the purpose of showing Kingman's withdrawal was not such as to show an assumption of primary liability by the remaining partners. The evidence, therefore, was not properly excluded upon the ground that if admitted the result could not properly be different.

Some other questions are presented, but under the views which we have expressed it does not seem probable that they will arise upon another trial.

In excluding the evidence in question we think that the court erred, and the judgment must be

REVERSED.