C. GEORGE STOCKHAUSEN, Appellee, v. ANDREW JOHNSON, Appellant.

**PRINCIPAL AND AGENT:** The Relation—Disqualification of Agent by Interest. Evidence reviewed, and *held* to be such as to preclude a member of a partnership from acting as agent for the partnership and for a creditor of the partnership at the same time and in relation to the same transaction.

**PARTNERSHIP:** Dissolution—Failure to Give Notice—Effect. The creditors of a partnership are not affected by a dissolution of which they have no notice.

**PARTNERSHIP:** Actions—Obligations of Firm—Burden of Proof to Avoid. Whenever it is shown that the obligation sued upon is a debt of the partnership and that the defendant is a member of the partnership, the burden of proof rests on the defendant to show that he is not liable.

**PARTNERSHIP:** Dissolution—Firm Debts—Continued Liability. Creditors of a partnership are not bound by a dissolution agreement not consented to by them, by which one partner agrees to pay the debts of the partnership.

**PRINCIPAL AND AGENT:** Power of Agent—Extraordinary Emergencies—Evidence. Evidence reviewed, and held *not* to justify the application of the principle ''that an agent *may* be justified, in view of extraordinary emergencies, in assuming extraordinary powers and bind the principal accordingly''.

**PRINCIPAL AND AGENT:** Power of Agent—Implied Power—Ratification of Similar Acts. Evidence reviewed, and *held* not to

show, by reason of other similar transactions, implied authority in an agent to receive certain property in payment of a note.

*Appeal from Webster District Court.*—C. G. LEE, Judge.

WEDNESDAY, JANUARY 12, 1916.

THIS is an action at law upon a promissory note. At the close of all the testimony, there was a directed verdict for the plaintiff. The defendant appeals.—*Affirmed.*

*Robert Healy*, for appellant.

*M. M. Joyce* and *Kenyon, Kelleher, O'Connor & Price*, for appellee.

PRESTON, J.—Plaintiff's action grows out of a certain loan made by the plaintiff in 1904 to the firm of Johnson & Waterbury, livestock dealers, and renewals of the loan by Waterbury in the name of the firm, but at a time when, as the defendant alleges, the firm had been dissolved. There was an attempted dissolution as between the partners after the execution of the note for the loan in question, but no notice of dissolution was given, and the plaintiff had no knowledge thereof. The firm consisted of the defendant, Johnson, and C. D. Waterbury. Plaintiff had sent considerable sums of money to C. D. Waterbury for investment in Iowa, and an important question in the case was whether the relations of plaintiff and Waterbury were those of principal and agent. But, as stated, the loan in question, for which the note sued upon was given, was made by the firm to the plaintiff, and the money was used in the firm. The defendant claims that an agency existed, by virtue of which Waterbury had authority to accept land and personalty in payment of the firm indebtedness to the plaintiff and to release the defendant from all liability to the plaintiff; also, that such an emergency presented itself to the agent Waterbury of the defendant's insolvency that the acts of the agent in accepting land and personalty were binding on the plaintiff. Plaintiff admits that C. D. Water-

bury was his agent in a sense and so far as making loans and reinvesting were concerned, but contends that Waterbury's agency did not, either expressly or impliedly, authorize Waterbury to accept payment of the indebtedness in lands or personalty and thus bind him. As stated, the trial court directed a verdict for the plaintiff, and defendant contends that this action was erroneous, and that there was sufficient evidence to warrant a finding of such an agency as is contended for by defendant.

The original petition alleged that in January, 1911, a promissory note was made and executed by C. D. Waterbury in the name of Johnson & Waterbury; that, at the time said note was executed, there existed a partnership between the last named parties. The petition, as amended, alleged that, in January, 1904, the defendant was a member of the firm of Johnson & Waterbury; that at that time, the plaintiff loaned the said firm $1,500, and that the individual members thereof made and executed their promissory note to the plaintiff for said sum, which note matured in January, 1907; that in January, 1907, the note was renewed by a note payable in two years, which note was signed by C. D. Waterbury as follows: "Johnson & Waterbury, By C. D. Waterbury"; that the note was again renewed in 1909 for a year, in 1910 for another year, and again renewed in 1911 for a year. The defenses set up by the defendant raised issues of payment, agency, estoppel, statute of limitations and surety; but the grounds relied upon for reversal are that the court erred in directing a verdict, because, as defendant claims, there was sufficient evidence to submit the case to the jury on the theory that C. D. Waterbury was the plaintiff's agent, with authority to receive payment in property, and that defendant did so pay said Waterbury.

There is no claim that plaintiff was ever paid anything on the note or debt by any person. Defendant became insolvent a short time after the loan was made. C. D. Waterbury died in 1912, and at that time he was insolvent. There

is no controversy in the evidence in the case. Plaintiff resided at all times in Philadelphia. C. D. Waterbury was cashier of the First National Bank of Dayton, Iowa. The defendant was a farmer in the vicinity of Dayton and engaged in the stock business. In 1902, Waterbury and defendant engaged in the partnership business of buying, feeding and selling stock under the firm name of Johnson & Waterbury. Prior to 1903, a cousin of C. D. Waterbury, one C. A. Waterbury, had visited Iowa and knew of the general condition here. C. A. was a brother-in-law of plaintiff. He had informed plaintiff that Iowa was a good place in which to invest money, and that C. D. Waterbury was in the banking business and could use some of plaintiff's spare money. Plaintiff sent to C. D. Waterbury different sums of money prior to 1903, at the request of C. D. Waterbury and for the purpose of supplying customers of C. D. Waterbury, who collected the interest and principal on these loans and accounted to plaintiff therefor. Some time in 1903, C. A. Waterbury told plaintiff of the partnership of Johnson & Waterbury; that the business was successful; and that Johnson was an extensive farmer. In December, 1903, plaintiff wrote C. D. Waterbury that C. A. Waterbury had advised him of the partnership of Johnson & Waterbury, and that the firm needed funds to carry on the business, and offered to loan the partnership money. A few days thereafter, in reply to this communication, C. D. Waterbury wrote a letter to plaintiff that he could place from $1,000 to $3,000 at 7 per cent. elsewhere, or that the firm could use the money. Thereafter, plaintiff sent $1,500 to Waterbury to be used in the firm, and with the expectation of loaning it to the firm. It is shown, without dispute, that this money was used by the firm in the firm business. It is admitted by the defendant, and also admitted in a deed executed June 27, 1904, by the defendant and his wife to C. D. Waterbury. This deed conveys certain real estate to Waterbury, and the deed recites that Waterbury assumes a mortgage on the property and certain other indebtedness, includ-

ing the original note given to plaintiff. In February, 1912, C. D. Waterbury became ill, from which illness he died in July, 1912. He at that time (February, 1912) owed C. A. Waterbury a personal loan, and also a personal loan to the plaintiff. Thereafter, C. A. Waterbury came to Dayton, with power of attorney from plaintiff to collect these claims and the note in litigation in this case. At that time, he made a personal demand on two different occasions on the defendant for the payment of this note. Eight days after this, defendant went to Waterbury's house, where they had a further talk with reference to the partnership of Johnson & Waterbury, concerning the unfinished business of the partnership, at which time the defendant, with knowledge that the note to plaintiff had not been paid, with knowledge that demand had been made upon him for the payment of the note, with knowledge of the fact that C. D. Waterbury had not paid the note to plaintiff as he agreed to do in the deed before referred to, signed and executed, as did also C. D. Waterbury, the following paper:

"Dayton, Iowa. Feb. 8, 1912.

"In consideration of two certain promissory notes of one thousand dollars each, given by Andrew Johnson, I hereby release him from all obligations on account of the partnership heretofore existing between the said Andrew Johnson and C. D. Waterbury and agree to settle all obligations outstanding from Johnson and Waterbury. This settlement to include any difference that may exist on account of the threshing machine outfit that was sold to Baine."

At the same time, defendant executed two promissory notes to Waterbury. It appears from the evidence, without dispute, that in 1904, defendant became financially involved. At that time, the partnership owed certain promissory notes and other indebtedness. Plaintiff never heard of any dissolution of the firm of Johnson & Waterbury from the time he first heard of the firm until the year 1912, nor did he have

any knowledge or information as to any change in the financial condition of the firm. He did not know until 1912 about the execution of the deed before referred to. As before stated, there was never any publication of notice of dissolution of the firm. Defendant admits that he never sent plaintiff any notice of his business relations with Waterbury. After the so-called dissolution of the firm in 1904, C. D. Waterbury, in order to keep his various businesses separate, continued to use the firm name in the transaction of the business and used the firm name in his own personal accounts, and continued the bank account in the bank of which he was cashier, in the name of Johnson & Waterbury. October 7, 1909, a notice was published in a Dayton paper of a public sale under the firm name of Johnson & Waterbury. It is claimed by defendant that C. A. Waterbury and others knew of the so-called dissolution prior to 1907. But C. A. Waterbury was not the agent of plaintiff until he appeared upon the scene with a power of attorney in 1912, and then for the purpose of collecting these claims. Some of the merchants in Dayton with whom the firm of Johnson & Waterbury transacted business did not learn of the dissolution until 1907. We have set out the statement of facts somewhat in detail, and therefrom it is apparent that defendant is liable in this case unless C. D. Waterbury was acting as the agent of plaintiff at the time he accepted from defendant the consideration for the deed, and had authority to bind plaintiff in that respect.

The evidence relied upon by the appellant to show the authority of C. D. Waterbury to act as plaintiff's agent is that of the plaintiff himself, to a large extent, together with some of the other circumstances. The plaintiff testified as a witness on this question substantially as follows:

"Before 1904, and afterwards, C. D. Waterbury made loans for me in Dayton, collected moneys for me, collected interest on the loans and remitted the interest to me, and he reinvested loans that he had made for me. I had absolute confidence in

his integrity and financial standing. I believed him to be an honest and upright man in those days. I had never been in Dayton and knew no other man personally there. I sent him thousands of dollars, on different occasions, for investments in Dayton and Webster County. I do not know whether the money he loaned Kinney was money I sent him directly or whether it was a reinvestment. He had charge of that money. I relied upon Waterbury as to the financial standing of Kinney. I loaned money to LeValley. Waterbury had charge of that and collected the interest and remitted to me, and he also acted for me and made a loan to Cole. He collected the interest and remitted to me. There were several other loans that he made for me in Dayton. In all these matters, I relied upon him for the purpose of making the loan, collecting the interest and keeping me advised as to the situation and condition of the investments. To that extent, he was my agent. When money would be paid and the loan matured, he would report to me and I would permit him to reinvest for me upon security that he thought was sufficient. My dealings with him extended from about 1894 or 1895 until 1911. During that time, there was an exchange of letters between us. He was the only person who acted for me or represented me in any of these transactions or any of the investments I made in Webster County. About December, 1903, I made inquiry of Waterbury as to whether he could or would make loans or invest some money in Webster County. At that time, I wrote him that his cousin said he was in partnership and needed funds to carry on the business, and I then offered to loan him money in that business. In January, 1904, I sent $1,500 to Waterbury. I had no notes signed by anybody at the time I sent that money. In February, 1904, I got a note from him for $1,500, signed, 'C. D. Waterbury and Andrew Johnson'. I was satisfied with the character of the note and the character of the signatures affixed thereto. I never met C. D. Waterbury personally. My dealings with

him were only of a business character. C. A. Waterbury told me that his cousin was reliable and a man of good judgment, careful in his business ventures. When I made these investments, I had no purpose to come to Iowa to investigate the character of the security or the financial standing of my debtors. That was left to C. D. Waterbury, so far as my business investments were concerned. I never had any fault to find with any of these investments or any of his acts in connection with his investments or loans which he made for me, until the present controversy arose. The personal claim of $500 that Waterbury owed me at his death was for money collected from someone which he retained with my approval, and I approved it when he sent me his note. Not until 1912 did I learn of Johnson's conveyance or transfer for the benefit of his creditors.''

The appellant claims that the dissolution took place from the date of the deed, June 27, 1904, and it appears that at that time, C. D. Waterbury was solvent.

1. Appellant's first proposition is that payment in cash, or its equivalent, to an agent who has authority to collect, binds the principal, citing *National Loan & Inv. Co. v. Bleasdale,* 140 Iowa 695, and that an agent who has authority to collect may, under extraordinary conditions, make unusual terms of settlement; and in case of an insolvent debtor, the acceptance of notes or security less than money may be best and necessary, citing 2 Corpus Juris, p. 628, point 29.

Appellant also cites 2 Corpus Juris, page 631, point 64, and *Scott v. Gilkey,* (Ill.) 39 N. E. 265, to the proposition that the agent cannot, if not indebted to the debtor, assume the payment of the debtor's indebtedness and discharge the latter from liability to his principal, as where the agent merely credits the account between the principal and himself and debits the account between the debtor and himself, although the agent may make a *bona fide* loan to the debtor and may receive back the money loaned, thereby rendering the trans-

action a payment by the debtor, so as to release the debtor from further liability to the principal.

Appellee has no quarrel with appellant as to the law thus cited, but claims that it does not apply to the facts in this case. The situation might be such that Waterbury could act as agent of the partnership and of plaintiff

1. PRINCIPAL AND AGENT: the relation: disqualification of agent by interest.

at the same time, but we think, under the evidence in this case, that it would not be possible for him to be the agent of the partnership and the agent of the plaintiff at the same time. The evidence clearly shows that, in each transaction between Waterbury and plaintiff, Waterbury was acting as the agent of the borrower, rather than the lender; that he received no compensation from plaintiff at any time; and that he never presumed to act without express authority from plaintiff first had, or upon his approval obtained after the transaction was closed. It is not claimed by the appellant that there was ever any express authority given by the plaintiff to Waterbury to do what defendant claims was done in regard to the alleged payment and settlement of this claim. As to the inference that might be drawn from the fact that the money represented by the note in suit was sent individually to Waterbury, the record clearly establishes that the defendant had nothing to do with financing the firm of Johnson & Waterbury. Waterbury procured all the loans, conducted all the correspondence with reference to financial matters, and kept the books of the firm. Any person sending money to the firm would send it to Waterbury. That was the custom and usage of the firm, as shown by the testimony of the defendant himself, and, as before stated, there is no dispute that this money went into the firm business. We think that plaintiff was entitled

2. PARTNERSHIP: dissolution: failure to give notice: effect.

to actual notice, or the equivalent of actual notice, of the so-called dissolution of the partnership which is shown to have existed. And where a member of a partnership withdraws, notice should be given of the

withdrawal. Without such notice, the retiring member will not be protected from liability for debts incurred in the firm name, even after his withdrawal. *Young v. Clapp,* 147 Ill. 176; *Meyer v. Krohn,* 114 Ill. 574, 580. And see *Southwick & Wheelock v. McGovern,* 28 Iowa 533; *Duff v. Baker,* 78 Iowa 642.

If, without notice of dissolution, a lender of money extends the loan after dissolution and accepts a new note in the firm name, he may maintain the action against the members of the old firm, including the retired members. *Jansen v. Grimshaw,* 125 Ill. 468 (26 Ill. App., 287).

The note sued on purports to be a partnership note, and it is shown to have been a partnership debt, and in that case, the plaintiff would be entitled to recover against the entire

3. PARTNERSHIP: actions: obligations of firm: burden of proof to avoid.

partnership. Plaintiff having shown that the defendant was a member of the firm, the burden shifts to him to show that he was not liable as such partner. *Sheldon v. Bigelow,* 118 Iowa 586; *Waller v. Davis,* 59 Iowa 103.

The deed before referred to, from Johnson to Waterbury, did not dissolve the firm. It doubtless was evidence of dissolution as between the partners. It is shown, without dispute,

4. PARTNERSHIP: dissolution: firm debts: continued liability.

that the partnership existed and that the money was loaned to the firm, and we think it is not competent for the two partners to get together, without the knowledge or consent of the plaintiff, who had loaned money, and arrange the matters and thus bind the plaintiff.

As bearing upon the question before referred to as to whether C. D. Waterbury could act as the agent of the partnership and as the agent of the plaintiff at the same time, see *Thomas v. Dessney,* 57 Iowa 58, 60; *First Nat. Bank of Emmetsburg v. Gunhus et al.,* 133 Iowa 409, 413; *German Sav. Bank v. Des Moines Nat. Bank,* 122 Iowa 742; *First Nat. Bank of Davenport v. Gifford,* 47 Iowa 582; *Findley v. Cowles,* 93 Iowa 389, 395.

2. It is true, of course, as contended for by appellant, that in some cases involving the rights of third persons, the principal is bound by the apparent authority of an agent, and not by express authority or instructions; but the authorities cited are not, we think, applicable to the facts in this case.

It is next contended by appellant that, under the doctrine of emergency agency, Waterbury had authority. As bearing upon this proposition, they cite 1 Waite's Acts & Def. 232, Sec. 12; Story on Agency, Secs. 85, 141, 193, 237. This proposition is not disputed by appellee, but they insist that the doctrine is not applicable to the facts in this case. Under this doctrine, there must be an emergency which demands prompt action. In this case, plaintiff knew of Johnson's financial condition from January 1 to June 27, 1904, when the deed was executed, and there is no evidence showing that there was any change in the financial condition of defendant or Waterbury from the date of the execution of the deed for a period of several months thereafter. There was correspondence between plaintiff and Waterbury about this time. Waterbury could have communicated with plaintiff and could have obtained his authority to accept the deed, or could have reported the taking of the deed after it was executed and could have received the approval or disapproval thereof by plaintiff. The undisputed evidence is that plaintiff had no knowledge of that instrument for some years afterwards. Except in one instance, where Waterbury retained $500 which had been collected for plaintiff, plaintiff gave Waterbury express authority for each transaction. We are of opinion that, under the records, it is not shown that Waterbury acted within any implied authority, or that he was warranted in making unusual terms of settlement, even if it should be conceded that Waterbury had authority to act for plaintiff at all.

3. It is next contended by appellant that a custom is sufficient to imply authority, and they cite *Grant v. Humerick,*

5. PRINCIPAL AND AGENT: power of agent: extraordinary emergencies: evidence.

123 Iowa 571, 573, to the point that, where it appears that an
alleged agent has performed acts similar to
the one in question, which have been ratified
by the principal, his authority · may be
implied. But there is but one instance to
which appellant refers, as we understand it, and that is
where Waterbury collected $500 for plaintiff and retained it.
Furthermore, it is shown that the retaining of this note was
immediately approved in a letter by plaintiff to Waterbury,
so that the prompt ratification amounted to the same as express
authority.

**6. PRINCIPAL AND AGENT:** power of agent: implied power: ratification of similar acts.

As to the suretyship ·relation, counsel for appellant say
that, in view of the decision in *McAreavy v. Magril,* 123 Iowa
605, they have not seen fit to argue the question of the surety-
ship relation at any length, but claim that the case should
have been submitted to the jury on the other questions sug-
gested. It is conceded by both that the rule of that case does
not follow the holdings · of perhaps the majority of other
courts. Plaintiff never consented to the change in the rela-
tionship between himself and the partnership on the original
indebtedness. Under the evidence in this case, we think that
we should spend no more time on this proposition.

There is no dispute as to the essential facts in the case,
and, admitting all the evidence and most favorable inferences
that could be drawn therefrom in favor of the defendant, we
think that for the reasons given, as a matter of law, the plain-
tiff was entitled to recover. Such was the holding of the dis-
trict court, and the judgment is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.